**BEFORE THE UNITED STATES**

**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| **IN RE: MANDALAY BAY 1 OCTOBER SHOOTING** | )<br>)<br>) | **MDL NO. 2864** |

**MEMORANDUM IN SUPPORT OF OPPOSITION TO MGM'S MOTION TO TRANSFER AND CENTRALIZE PURSUANT TO 28 U.S.C § 1407**

Mark P. Robinson, Jr., Esq.
California Bar No. 54426
Daniel S. Robinson, Esq.
California Bar No. 244245
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
mrobinson@robinsonfirm.com

Kevin R. Boyle, Esq.
California Bar No. 192718
Rahul Ravipudi, Esq.
Nevada Bar No. 14750
**PANISH SHEA & BOYLE LLP**
8816 Spanish Ridge Avenue
Las Vegas, NV 89148
(702) 560-5520; Fax: (702) 975-2515
boyle@psblaw.com

Robert T. Eglet, Esq.
Nevada Bar No. 3402
Robert M. Adams, Esq.
Nevada Bar No. 6551
Cassandra S.M. Cummings, Esq.
Nevada Bar No. 11944
**EGLET PRINCE**
400 S. Seventh St., Suite 400
Las Vegas, NV 89101
(702) 450-5400; Fax: (702) 450-5451
eservice@egletlaw.com

*Attorneys for Plaintiffs*
*Rachel Sheppard, Lotus Herrera, Special*
*Administrator of the Estate of Brian Fraser,*
*Stephanie Fraser as the Guardian Ad Litem*
*for Aubree Fraser and Brayden Fraser,*
*Nicholas Robone, Anthony Robone, Jovanna*
*Calzadillas and Francisco Calzadillas*

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL AND PROCEDURAL BACKGROUND | 1 |
|  | A. DISTRICT OF NEVADA | 2 |
|  | B. CENTRAL DISTRICT OF CALIFORNIA CASES | 3 |
|  | C. DECLARATORY RELIEF ACTIONS | 3 |
| III. | CENTRALIZATION SHOULD BE DENIED | 5 |
|  | A. THE VICTIMS ARE REPRESENTED BY COMMON COUNSEL | 6 |
|  | B. THE NUMBER OF ACTIONS INVOLVED IS MINIMAL | 8 |
|  | 1. *Sheppard v. Mandalay Bay* | 9 |
|  | 2. Central District of California | 10 |
|  | 3. Declaratory Relief Actions are Invalid | 10 |
|  | C. COMMON ISSUES OF LAW DO NOT SUPPORT TRANSFER OR CENTRALIZATION | 14 |
|  | D. MGM'S MOTIVE IS IMPROPER | 15 |
|  | E. THE VICTIMS UNIFORMLY OPPOSE CENTRALIZATION | 16 |
| IV. | IF CENTRALIZATION IS GRANTED, WHICH IT SHOULD NOT, NEVADA IS THE APPROPRIATE DISTRICT | 17 |
| V. | CONCLUSION | 20 |

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES – SUPREME COURT**

*Skelly Oil Co. v. Phillips Petroleum Co.*
    339 U.S. 667 (1950)     12

**FEDERAL CASES – J.P.M.L.**

*In re 21st Century Oncology Customer Data Security Breach Litig.*
    214 F. Supp. 3d 1357, 1358 (J.P.M.L. Oct. 6, 2016)     20

*In re: Apple iPhone 4 Prods. Liab. Litig.*
    746 F. Supp. 2d 1357 (J.P.M.L. 2010)     20

*In re Auto. Refinishing Paint Antitrust Litig.*
    177 F. Supp. 2d 1378 (J.P.M.L. 2001)     17

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*
    528 F. Supp. 2d 1339 (J.P.M.L. 2007)     18

*In re Best Buy Co.*
    804 F. Supp. 2d 1376 (J.P.M.L. 2011)     5

*In re Cal. Wine Inorganic Arsenic Levels Prods. Liab. Litig.*
    109 F. Supp. 1362 (J.P.M.L. 2015)     7, 9, 16

*In re Cheerios Mktg. & Sales Practices Litig.*
    655 F. Supp. 2d 1368 (J.P.M.L. 2009)     20

*In re Constellation Techs. LLC, Patent Litig.*
    38 F. Supp. 3d 1392 (J.P.M.L. 2014)     8, 9

*In re CVS Caremark Corp. Wage & Hour Empl. Practices Litig.*
    684 F. Supp. 2d 1377 (J.P.M.L. 2010)     7, 16, 17

*In re: Dometic Corp. Gas Absorption Refrigerator Prods. Liab. Litig.*
    285 F. Supp. 3d 1358 (J.P.M.L. 2018)     7, 11

*In re Eli Lilly & Co. (Cephlaxin Monohydrate) Patent Litigation*
    446 F. Supp. 242 (J.P.M.L. 1978)     5, 6, 14

*In re Fed. Home Loan Mortg. Corp. Sec. & Derivative Litig.*
    303 F. Supp. 2d 1379 (J.P.M.L. 2004)     19

*In re Fed. Hous. Fin. Agency*
    190 F.Supp.3d 1356 (J.P.M.L. 2016)     14

*In re Flat Glass Antitrust Litig.*
    559 F. Supp. 2d 1407 (J.P.M.L 2008)     17

*Foley v. Transocean Ltd. (In re Transocean Ltd. Sec. Litig.)*
    753 F. Supp. 2d 1373 (J.P.M.L. 2010)     8

# TABLE OF AUTHORITIES

*In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*
293 F. Supp. 2d 1381 (J.P.M.L. 2003) .......... 18

*In re Gerber Probiotic Prods. Mktg.*
899 F.Supp.2d 1378 (J.P.M.L. 2012) .......... 5, 9

*In re Highway Acci. Near Rockville*
388 F. Supp. 574 (J.P.M.L. 1975) .......... 5, 16

*In re High Quality Printing Inventions, LLC, ('070) Pat. Litig.*
176 F. Supp. 3d 1381, 1384 (J.P.M.L. 2010) .......... 5

*In re Intuitive Surgical, Inc.*
883 F. Supp. 2d 1339 (J.P.M.L. 2012) .......... 8

*In re Nat'l Ass'n*
52 F. Supp. 3d 1377 (J.P.M.L. 2014) .......... 14

*In re Phenylpropanolamine (PPA) Products Liability Litigation*
173 F. Supp. 2d 1377 (J.P.M.L. 2001) .......... 19

*In re Ocala Funding, LLC, Commer. Litig.*
867 F. Supp. 2d 1332 (J.P.M.L. 2012) .......... 7

*In re Target Corp. Customer Data Sec. Breach Litig.*
MDL No. 2522, 2014 U.S. Dist. LEXIS 46610 (J.P.M.L. Apr. 2, 2014) .......... 17

*In re TD Bank, N.A.*
703 F. Supp. 2d 1380 (J.P.M.L. 2010) .......... 7

*In re Townsend Farms Organic Anti-Oxidant Blend Prods. Liab. Litig.*
24 F. Supp. 3d 1372 (J.P.M.L. 2014) .......... 7

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*
568 F. Supp. 1250 (J.P.M.L. 1983) .......... 20

*In Re: Western States Wholesale Natural Gas Antitrust Litigation*
MDL 1566 .......... 19

*In re Worldcom, Inc., Sec. & ERISA Litig.*
226 F. Supp. 2d 1352 (J.P.M.L. 2002) .......... 19

*In re: Yellow Brass Plumbing Component Prods. Liab. Litig.*
844 F. Supp. 2d 1377 (J.P.M.L. 2012) .......... 6

*In Re: Zappos.com, Inc. Customer Data Security Breach*
MDL No. 2357 .......... 19

**FEDERAL CASES – FEDERAL CIRCUIT COURTS**

*Aetna Life Ins. Co. of Hartford v. Haworth*
300 U.S. 227, 242 (1937) .......... 11

*Cunningham Bros., Inc. v. Bail*
407 F.2d 1165 (7th Cir. 1969) .......... 12

*Gov't Emples. Ins. Co. v. Dizol*
133 F.3d 1220 (9th Cir. 1998) .......... 11, 12

## TABLE OF AUTHORITIES

*Nelson v. Swift*
　　271 F.2d 504 (DC Cir. 1959)　　　　　　　　　　　　　　11

*Ransom v. Brennan*
　　437 F.2d 513 (5th Cir. 1971)　　　　　　　　　　　　　11

*Robi v. Five Platters, Inc.*
　　838 F.2d 318 (9th Cir. 1988)　　　　　　　　　　　　　15

*Santos v. State Farm Fire and Cas. Co.*
　　902 F.2d 1092 (2d Cir. 1990)　　　　　　　　　　　　　11

**FEDERAL CASES – FEDERAL DISTRICT COURTS**

*Bou-Matic, LLC v. Ollimac Dairy, Inc.*
　　2007 U.S. Dist. LEXIS 76137, 2007 WL 2898675 (E.D. Cal. Sept. 28, 2007)　　13

**FEDERAL STATUTES**

6 U.S.C. §§ 441-444　　　　　　　　　　　　　　　　　1, 10

28 U.S.C. § 1407　　　　　　　　　　　　　　　　　*Passim*

28 U.S.C. § 2201　　　　　　　　　　　　　　　　　11, 12

## I.    **INTRODUCTION**

MGM's Motion to Transfer and Centralize is the result of a series of actions taken with the intent of fabricating and manufacturing Multi-District Litigation ("MDL"). The scheme to create an MDL began on June 22, 2018 with MGM's baseless removal of the Nevada state court case, *Sheppard, et al. v. Mandalay Bay, LLC f/k/a Mandalay Corp.* ("*Sheppard*") on the grounds that the federal courts have exclusive jurisdiction over the *Sheppard* Plaintiffs' claims due to the application of the Support Anti-Terrorism by Fostering Effective Technologies Act ("SAFETY Act"), 6 U.S.C §§ 441-444. MGM then removed three (3) cases to the Central District of California on the same, flawed argument. In order to further its plan to create an MDL, MGM refused to enter into stipulations to dismiss the California cases, thereby forcing those plaintiffs to file motions to dismiss their own cases or take other appropriate action. Likely recognizing that four (4) cases between two (2) districts would not be sufficient to establish an MDL, MGM filed nine (9) Declaratory Relief Actions against 1,977 victims of the Mandalay Bay 1 October Shooting that did not have pending litigation against MGM (the "Declaratory Relief Actions"). In those actions, MGM seeks a judgment that the SAFETY Act applies to insulate MGM from liability in any case that may be filed by the victims named therein.

MGM's conduct leading up to the filing of the instant Motion is reprehensible. It is abusive of the courts, amounts to forum shopping, and is nothing more than an attempt to limit the victims' access to justice. There is no basis to Transfer and Centralize the cases addressed in MGM's Motion because: the overwhelming majority of victims are represented by common counsel; the number of actions involved are minimal; common questions of law do not support centralization; MGM's motives behind seeking centralization are improper; and the victims oppose centralization. MGM cannot meet its burden to demonstrate that centralization is appropriate. Accordingly, the *Sheppard* Plaintiffs respectfully request this Honorable Panel deny MGM's Motion.

///

///

///

## II.    FACTUAL AND PROCEDURAL BACKGROUND

After the tragedy of 1 October, victims began filing lawsuits in an attempt to recover damages resulting from their injuries.[1] It became evident that there was potential for voluminous litigation arising from the Mandalay Bay 1 October Shooting, which would require extensive coordination among the various plaintiffs and firms to streamline discovery and reduce the burden on the courts.[2] Recognizing the need for coordination of these cases, three (3) firms – Eglet Prince, Robinson Calcagnie, Inc., and Panish Shea & Boyle, LLP – formed a Leadership Group to work in concert, and associate with, numerous other law firms to form a strategy as to the filing and prosecution of these cases.[3] This coordinated group of attorneys has held monthly meetings in Las Vegas, at the offices of Eglet Prince, since January 17, 2018 to discuss strategy, discovery, case status, and the handling of costs.[4] The firms established a common fund in which each participating firm has deposited, or will deposit, funds to cover the costs of litigation.[5] The victims represented by the coordinated group of attorneys have all agreed that, if they file lawsuits, they will only file in the Eighth Judicial District Court for Clark County, Nevada.[6] The group is well organized and is working together for the benefit of the victims and the Nevada state court. Currently, the group only wishes to pursue the *Sheppard* action, which, following MGM's baseless removal, has had extensive motion practice involving the applicability of the SAFETY Act.

### A.  DISTRICT OF NEVADA

*Sheppard* was originally filed on February 16, 2018 in the Eighth Judicial District Court for Clark County, Nevada. The operative First Amended Complaint was filed on June 4, 2018 alleging ten (10) wholly state law claims for relief against MGM.[7] In response, MGM filed a notice of removal to the United States District Court for the District of Nevada based on an absurd, unsupported argument that the SAFETY Act applies to insulate MGM from liability.[8] The

---

[1] *See* Declaration of Robert T. Eglet, Esq, attached as Exhibit "1," at ¶ 2.
[2] *Id.* at ¶ 3.
[3] *Id.* at ¶ 7; Declaration of Mark P. Robinson, Jr., Esq., attached as Exhibit "2;" and Declaration of Kevin R. Boyle, Esq., attached as Exhibit "3."
[4] *See* Declaration of Robert T. Eglet, Esq., Exhibit "1," at ¶ 10; Declarations from the Coordinated Group, attached collectively as Exhibit "4."
[5] *See* Declaration of Robert T. Eglet, Esq., Exhibit "1," at ¶ 8.
[6] *See* Declarations from the Coordinated Group, Exhibit "4."
[7] *See Sheppard* First Amended Complaint, filed June 4, 2018, attached as Exhibit "5."
[8] *See* Notice of Removal, filed June 22, 2018, attached as Exhibit "6."

*Sheppard* Plaintiffs promptly filed their Motion to Remand on June 29, 2018 arguing that the SAFETY Act does not apply for several reasons and, thus, the federal court lacks jurisdiction over the purely state law claims.[9]  MGM filed an opposition to the Motion to Remand on July 27, 2018 and the *Sheppard* Plaintiffs filed their Reply on August 1, 2018.[10]  The parties are currently waiting for a ruling on the fully briefed Motion to Remand from the Honorable Richard F. Boulware.

### B. CENTRAL DISTRICT OF CALIFORNIA CASES

MGM identifies three (3) personal injury actions that are currently pending in the United States District Court for the Central District of California, Western Division: *Ramirez*; *Pereda*;[11] and *Maggiore* (the "California Cases"), each of which were removed from state courts based on the alleged application of the SAFETY Act.[12]  Counsel for the plaintiffs in each of those cases previously requested that MGM enter into a stipulation to dismiss the cases so that the plaintiffs could re-file in Nevada state court, which MGM refused.[13]  After MGM refused to stipulate for dismissal, the plaintiffs in *Ramirez* and *Pereda* filed motions to dismiss their cases, which will be heard on October 29, 2018 by the Honorable Judge John Kronstadt.[14]  In *Maggiore*, the plaintiff filed a motion to remand similar to the one filed in *Sheppard* and filed a first amended complaint.[15]

### C. DECLARATORY RELIEF ACTIONS

On July 10, 2018, MGM filed a Motion in the District of Nevada requesting a thirty-day extension of time in which to prepare the Opposition to the *Sheppard* Plaintiffs' Motion to Remand

---

[9] *See* Motion to Remand, filed June 29, 2018, attached as Exhibit "7."

[10] *See* Opposition to the Motion to Remand, filed July 27, 2018, attached as Exhibit "8;" Reply in Support of the Motion to Remand, filed August 1, 2018, attached as Exhibit "9."

[11] *See* Notice of Association of Counsel filed August 13, 2018, attached as Exhibit "10," indicating *Pereda* is now part of the coordinated group for purposes of litigation.

[12] *See* Schedule of Actions, ECF Doc. 1-2.

[13] *See* Declaration of Kevin R. Boyle, Esq., attached as Exhibit "3," at ¶ 13.

[14] *See* Plaintiff's Notice of Motion and Motion for an Order of Dismissal without Prejudice, *Pereda v. MGM Resorts International, et al.*, 2:18-cv-05570-JAK-FFM, ECF No. 29, attached as Exhibit "11," at pg. 2:6-16; *see also* Plaintiff's Notice of Motion and Motion for an Order of Dismissal without Prejudice Pursuant to Federal Rule of Civil Procedure 41(a)(2), *Ramirez, et al. v. MGM Resorts International, et al.*, 2:18-cv-05564-JAK-FFM, ECF No. 40, attached without exhibits, as Exhibit "12," *see also* Transcript from July 17, 2018 Hearing in front of Judge Kronstadt, at pg. 23:3-4, attached as Exhibit "13."

[15] *See* Civil Docket for *Maggiore v. MGM Resorts International, et al.*, 2:18-cv-05640-JAK-FFM, attached as Exhibit "14."  Counsel for Arianna Maggiore has agreed to associate with Panish Shea & Boyle for the handling of the Maggiore case, thereby bringing that case into the Leadership Group for purposes of handling. *See* Declaration of Kevin R. Boyle, Esq., attached as Exhibit "3," at ¶ 15.

(originally due July 13, 2018) ostensibly because MGM required more time to research the applicability of the SAFETY Act.[16]  Judge Boulware granted MGM a fourteen (14) day extension until July 27, 2018.[17]

On July 13, 2018, rather than file an Opposition to the *Sheppard* Plaintiffs' Motion to Remand, MGM began filing complaints seeking declaratory judgments against victims of the Mandalay Bay 1 October Shooting stating that the SAFETY Act applies thereby eliminating any MGM entity's potential for liability.[18]  Over the course of a week, MGM filed a total of nine (9) such complaints in the following nine (9) districts: Alaska, Arizona, Central District of California, Western District of California, Southern District of Florida, Nevada, Southern District of New York, Southern District of Texas, and Utah.[19]  None of the 1,977 victims named as defendants in the Declaratory Relief Actions have cases currently pending against MGM.[20]  The Leadership Group and/or the firms working as part of the coordinated group represent approximately **ninety-nine percent** (99%) of the victims named in the Declaratory Relief Actions.[21]

To date, MGM has not properly served any of the victims with the Declaratory Relief Actions, despite including those actions in its Schedule A and argument in support of the instant Motion to Transfer and Centralize. While the Leadership Group and related firms received emails related to the Declaratory Relief Actions, none have been authorized to accept service of any complaints.[22]  The Leadership Group provided written notice to MGM's counsel of the deficient service attempts on August 7, 2018, and advised MGM's counsel that the victims have not authorized any attorney to accept service of any complaint and have not retained any attorney to represent them as defendants in the Declaratory Relief Actions.[23]

///

---

[16] *See* Motion for Extension of Time, attached as Exhibit "15."
[17] *See* Minute Order Granting MGM's Request for Extension of Time, attached as Exhibit "16."
[18] *See* Memorandum in Support of MGM's Motion to Transfer and Centralize, ECF No. 1-1, pg. 2.
[19] *Id.*
[20] *See* Declaration of Robert T. Eglet, Esq, Exhibit "1," at  ¶ 17.
[21] *Id.* at ¶ 16.
[22] *See* Correspondence Regarding Deficient Service from the Leadership Group to Counsel for MGM, attached as Exhibit "17."
[23] *Id.*

### III.   **CENTRALIZATION SHOULD BE DENIED**

MGM has the burden to demonstrate that centralization of the cases identified in Schedule A is proper under 28 U.S.C. §1407. *In re Eli Lilly & Co. (Cephlaxin Monohydrate) Patent Litigation*, 446 F. Supp. 242, 244 (1978). The Judicial Panel on Multidistrict Litigation (the "Panel") has repeatedly held that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011); *In re Gerber Probiotic Prods. Mktg.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012). Centralization is not appropriate simply because actions arise out of the same disaster. *In re Highway Acci. Near Rockville*, 388 F. Supp. 574, 575 (J.P.M.L. 1975). The moving party must still satisfy the Panel that all criteria under Section 1407 has been met to justify transfer and centralization. *Id.* Centralization is only proper where cases pending in different districts involve one or more common questions of fact and where transfer of the cases "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). In order to meet its burden, MGM must demonstrate that "the common factual questions are sufficiently complex or that the accompanying discovery will be so time consuming" that transfer would be warranted. *Eli Lilly & Co.*, 446 F.Supp. at 244.

Before granting a motion to transfer and centralize under Section 1407, the Panel considers whether there are other options available that are preferable over centralization and will reduce the risks of inconsistent rulings and duplicative discovery. *See generally Eli Lilly & Co.* 446 F. Supp. at 244; *Best Buy Co.*, 804 F. Supp. 2d at 1378; *Gerber Probiotic Prods.*, 899 F. Supp. 2d at 1379. Some options that the Panel has considered preferable to centralization include: "**agreement by plaintiffs to voluntarily dismiss their actions in favor of one district**;" transferring venues pursuant to 28 U.S.C. § 1404; and cooperation and coordination among parties and courts. *Gerber Probiotic Prods.*, 899 F. Supp. 2d at 1379-1380 (emphasis added); *see also In re High Quality Printing Inventions, LLC, ('070) Pat. Litig.*, 176 F. Supp. 3d 1381, 1384 (J.P.M.L. 2010) (Panel denying centralization of eight (8) cases and suggesting to the parties as alternatives to centralization: coordinate common discovery and/or select one of the involved courts to rule on any motions to dismiss). Additionally, in *Eli Lilly & Co.*, the Panel considered the following

suitable alternatives to transfer under 28 U.S.C. § 1407: the parties could notice the same deposition in all related actions thereby allowing all parties and counsel to participate without duplication; the parties could stipulate to utilize the same discovery in all actions in which it is relevant; and the parties could request an order from the courts directing the parties to coordinate their pre-trial efforts. *Eli Lilly & Co.*, 446 F. Supp. at 244.

MGM cannot meet its burden to demonstrate that transfer and centralization under Section 1407 is necessary or appropriate in this case for the following reasons:

1. A vast majority of the victims named in the various actions are represented by common counsel;

2. The number of actions involved are far too minimal to support centralization;

3. The common issues of law manufactured by MGM for purposes of seeking transfer and centralization do not support granting MGM's Motion;

4. MGM is acting with improper motives in seeking centralization; and

5. The victims are opposed to centralization.

In short, transfer and centralization would not be more convenient to the parties or witnesses and would not further the just and efficient conduct of any of the litigation involved.  Transfer and centralization would only serve the interests of MGM while completely disregarding the desires of thousands of victims of this mass shooting.  Accordingly, the *Sheppard* Plaintiffs respectfully request that this esteemed Panel deny MGM's Motion for Transfer and Centralization.

### A. THE VICTIMS ARE REPRESENTED BY COMMON COUNSEL

The *Sheppard* Plaintiffs and approximately **ninety-nine percent** (99%) of the victims named in the Declaratory Relief Actions are represented by the Leadership Group and/or the firms working as part of the consolidated group.[24]  The amount of coordination that has already occurred among the involved firms is extensive and weighs heavily against centralization. Historically, the Panel considers voluntary coordination between the parties, and judges, to be a preferable alternative to centralization, particularly where the parties are represented by the same counsel. *See In re: Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1379

---

[24] *See* Declaration of Robert T. Eglet, Esq, Exhibit "1," at ¶ 16.

(J.P.M.L. 2012). Centralization is disfavored in circumstances where the parties are represented by the same firms. *See In re CVS Caremark Corp. Wage & Hour Empl. Practices Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010). Even where the Panel has denied centralization, it still "encourage[s] the parties to pursue . . . alternatives [i.e. coordinating and consolidating efforts] to minimize the potential for duplicative discovery and inconsistent pretrial rulings." *Yellow Brass*, 844 F. Supp. 2d at 1379; *In re Cal. Wine Inorganic Arsenic Levels Prods. Liab. Litig.*, 109 F. Supp. 1362, 1363 (J.P.M.L. 2015) (denying centralization where same counsel represented the movants in both actions in both districts and the defendants were the same in both actions with the intent to coordinate any other cases that were filed).

Similarly, the coordination of common counsel was determinative in *In re Ocala Funding, LLC, Commer. Litig.*, 867 F. Supp. 2d 1332, 1332 (J.P.M.L. 2012) in which the movant was represented by common counsel in four (4) actions and the plaintiffs in another jurisdiction were willing to coordinate proceedings in related cases. There had already been extensive coordination among three (3) existing actions. *Id.* The Panel stated, "[g]iven the limited number of actions and the present circumstances, informal cooperation among the involved attorneys and courts is both **practicable and preferable**." *Id.* (emphasis added); *see also In re TD Bank, N.A.*, 703 F. Supp. 2d 1380, 1381 (J.P.M.L. 2010) (the Panel stated that alternatives to transfer existed that would minimize the possibility of duplicative discovery and/or inconsistent pre-trial rulings due to the fact that there were only three (3) actions pending and the plaintiffs were represented by common counsel). Even in a case in which there were nine (9) actions pending in nine (9) different districts, the Panel denied Section 1407 transfer in part because the plaintiffs were all represented by common counsel, the defendants' counsel had a good working relationship, and informal cooperation among the involved attorneys and coordination between the courts was preferable. *In re Townsend Farms Organic Anti-Oxidant Blend Prods. Liab. Litig.*, 24 F. Supp. 3d 1372, 1372-1373 (J.P.M.L. 2014); *see also In re Dometic Corp. Gas Absorption Refrigerator Prods. Liab. Litig.*, 285 F. Supp. 3d 1358, 1359 (J.P.M.L. 2018) (similar).

MGM's counsel was well aware of the plan developed by the Leadership Group and the coordinated firms to file cases in Clark County, Nevada in such a manner that would allow the

parties the opportunity to coordinate discovery, eliminate duplication, and proceed in a manner convenient to the parties.[25] There are a total of 1,989 victims whose cases are at issue before this Panel, of which the Leadership Group and/or coordinated firms represent ninety-nine percent (99%).[26] The level of coordination among the victims' counsel weighs heavily against centralization.

## B. THE NUMBER OF ACTIONS INVOLVED IS MINIMAL

None of the actions identified in MGM's Schedule of Actions are properly before this Panel. If this Panel considers the context surrounding the actions, it is evident that, at best, only a single action is properly before the Panel. There are only four (4) actions filed by the victims of the Mandalay Bay 1 October Shooting – the three (3) California Cases that sought dismissal, but which MGM refused to stipulate to, and the *Sheppard* case where a Motion to Remand has been fully briefed and the parties await a ruling. The only other actions before this Panel are the Declaratory Relief Actions, which should not be considered because they not only constitute a perversion of the Declaratory Judgment Act, but they were also brought, as MGM has admitted, for the purpose of forum shopping.

The party seeking centralization "bears a heavier burden of demonstrating the need for centralization" where only a minimal number of actions are involved. *Foley v. Transocean Ltd. (In re Transocean Ltd. Sec. Litig.)*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010). Where, as here, there are a minimal number of actions pending before the Panel, the party seeking centralization must convince the Panel that the factual questions shared by the actions are sufficiently complex or numerous to justify transfer under Section 1407. *In re Intuitive Surgical, Inc.*, 883 F. Supp. 2d 1339, 1340 (J.P.M.L. 2012); *see also In re Constellation Techs. LLC, Patent Litig.*, 38 F. Supp. 3d 1392, 1393 (J.P.M.L. 2014) (finding five (5) actions filed in two (2) districts as insufficient to establish MDL). The Panel considers any activity or related cases filed after a party files a motion for centralization and transfer. *See id.* However, even if more cases are filed after the original

---

[25] *See* Declaration of Robert T. Eglet, Esq., Exhibit "1," at ¶ 12; *see also* Declaration of Kevin R. Boyle, Esq., Exhibit "3," at ¶¶ 4-7

[26] Eight (8) plaintiffs in the *Sheppard* action; three (3) plaintiffs in the Central District of California, and 1,977 victims named in the Declaratory Relief Actions.

motion, centralization still is not proper if those cases involve the same counsel as the others and/or the counsel is working with the movant. *See id.* Additionally, the possibility of hundreds or thousands of future cases is not a sufficient basis for centralization under Section 1407 where minimal cases are pending in front of the Panel. *Id.*; *Cal. Wine Inorganic*, 109 F. Supp. at 1362.

A number of cases filed in California were voluntarily dismissed by the victims in order for those victims to regroup and re-file in the State of Nevada.[27] MGM references those filings and dismissals in an apparent attempt to increase the number of cases at issue before this Panel.[28] An agreement to voluntarily dismiss actions for the purposes of filing in one (1) court, however, is considered by this Panel as a **preferable alternative** to centralization under Section 1407. *Gerber Probiotic Prods.*, 899 F. Supp. 2d at 1379. Additionally, the parties seeking dismissal of their personal injury actions in the Central District of California do so for the purposes of filing in Nevada to further the "interest[s] of judicial economy to permit [the named plaintiff] to join the rest of the victims in state court in Nevada."[29] It is not proper to consider those cases that were previously dismissed or the hypothetical future cases referenced by MGM when determining whether centralization is proper. As it stands, the cases at issue before this Panel are all based on a ruse perpetrated by MGM's faulty arguments related to the SAFETY Act. MGM's burden to demonstrate that centralization is appropriate and necessary is especially high here considering the limited number of actions involved and MGM cannot meet that burden.

### 1. *Sheppard v. Mandalay Bay*

The *Sheppard* Plaintiffs fully briefed the SAFETY Act specifically identifying each of the reasons why it cannot apply to create federal jurisdiction over their state law claims.[30] Most importantly, the *Sheppard* case is about the negligence of the Mandalay Bay hotel in the six (6) days leading up to 1 October during which it affirmatively assisted the Shooter with bringing his equipment to his hotel rooms and allowed him to remain in those rooms despite numerous warning

---

[27] *See* Declaration of Kevin Boyle, Esq., Exhibit "3," at ¶¶ 8, 11.
[28] *See* Memorandum in Support of MGM's Motion to Transfer and Centralize, ECF No. 1-1, at pg. 1-2.
[29] *See* Plaintiff's Motion for an Order of Dismissal in *Pereda,* Exhibit "11," at pg. 2:6-16; *see also* Plaintiff's Motion for an Order of Dismissal in *Ramirez,* Exhibit "12."
[30] *See* Motion to Remand and Reply in Support of Same, attached as Exhibits "7" and "9," respectively.

signs in his behavior.[31]   The SAFETY Act only applies to create exclusive federal jurisdiction to claims arising out of injuries caused by the performance, or non-performance, of a certified Seller's Qualified Anti-Terrorism Technology ("QATT") during a violent act the Secretary of Homeland Security determines is an "act of terrorism."   *See* 6 U.S.C §§ 441-444.   MGM claims that the SAFETY Act applies because it knew that the security at the concert venue, retained by LiveNation, was a certified seller of QATT.[32]   However, the issue in *Sheppard* is Mandalay Bay's liability in what it did incorrectly in the days leading up to the shooting, not about what occurred at the venue during the shooting.[33]   Thus, MGM's argument for the application of the SAFETY Act must fail, thereby divesting the Court for the District of Nevada of any federal jurisdiction and removing *Sheppard* from the potential MDL.

### 2.  *Central District of California*

As discussed, *supra*, there are three (3) cases that MGM removed from state court to the Central District of California under its SAFETY Act argument.  Two (2) of those cases (*Ramirez* and *Pereda*) have pending Motions to Dismiss filed by the plaintiffs, which would allow those plaintiffs to refile in Nevada to be part of the coordinated group.  The third case, *Maggiore*, has a pending Motion to Remand similar to that filed in *Sheppard*, which should be granted. Accordingly, none of the cases in the Central District of California are appropriately before that Court and, thus, should not be considered when determining whether centralization is appropriate.

### 3.  *Declaratory Relief Actions are Invalid*

MGM's Motion to Transfer and Centralize includes the nine (9) Declaratory Relief Actions MGM filed against 1,977 victims of the Mandalay Bay 1 October Shooting, none of which have been served on the victims named therein.  It appears that MGM is attempting to circumvent due process and the rules of service by serving the Leadership Group with the instant Motion, which includes the Declaratory Relief Actions.  The Leadership Group notified MGM's counsel that the attempted service is deficient and that counsel has not been authorized to accept service of same. *Nelson v. Swift*, 271 F.2d 504, 505 (DC Cir. 1959); *see also Santos v. State Farm Fire and Cas.*

---

[31] *See* First Amended Complaint, attached as Exhibit "5."
[32] *See* Opposition to the Motion to Remand, attached as Exhibit "8."
[33] *See* Reply in Support of Motion to Remand, attached as Exhibit "9."

*Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990) ("service of process on an attorney not authorized to accept service for his client is ineffective"); *Ransom v. Brennan*, 437 F.2d 513, 518-519 (5th Cir. 1971) ("[A]n attorney, solely by reason of his or her capacity as attorney, is not the client's agent 'by appointment' to receive service of process.")

Each Declaratory Relief Action requests that the presiding court issue a declaration that the SAFETY Act applies to any and all claims arising out of the Mandalay Bay 1 October Shooting. As an initial matter, complaints for declaratory relief are rarely appropriate for transfer and centralization pursuant to Section 1407 because they often involve little, to no, discovery and, any discovery they do require, would be significantly different than the discovery at issue in allegedly related personal injury actions. *See Dometic Corp. Gas*, 285 F. Supp. 3d at 1359.

Furthermore, the Declaratory Relief Actions should not be considered when determining whether centralization is appropriate because they are invalid on their face. None of the victims named in the Declaratory Relief Actions have cases or controversies pending against MGM, thus, the Actions do not meet the requirements under 28 U.S.C. §2201(a) for such claims, which states:

> In a **case of actual controversy within its jurisdiction** . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. (Emphasis added.)

Under this provision, "a lawsuit seeking declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution." *Gov't Emples. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998) (citing *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 239-240 (1937)). A "controversy" under the Declaratory Judgment Act "must be one that is appropriate for judicial determination" and not a hypothetical or abstract controversy. *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 242 (1937) (internal citations omitted).

Additionally, a suit brought under 28 USC § 2201 must meet the jurisdictional requirements for a case in federal court either through diversity jurisdiction or federal question jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 673-674 (1950)

(superseded by statute on other grounds by *Horace Mann Ins. Co. v. Johnson*, 953 F.2d 575, 577 (10th Cir. 1991)). The *Skelly* Court stated:

> It would turn into the federal courts a vast current of litigation indubitably arising under State law, in the sense that the right to be vindicated was State-created, if a suit for a declaration of rights could be brought into the federal courts merely because an anticipated defense derived from federal law.

*Id.* (internal citations omitted). Here, MGM seeks declaratory judgment based on what would otherwise by an affirmative defense arising out of the SAFETY Act against parties that do not have any pending litigation against MGM. A district court has the discretion to determine whether it is appropriate to entertain a declaratory relief action brought under 28 U.S.C. § 2201. *Dizol*, 133 F.3d at 1223. The Declaratory Judgment Act is permissive, not mandatory. *Id.*

In the context of personal injury cases, the Seventh Circuit made the following statement:

> **[W]e are of the opinion that to compel potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the alleged tortfeasor would be a perversion of the Declaratory Judgment Act.** The primary purpose of the Act is to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.

*Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167-1168 (7th Cir. 1969) (emphasis added). The rights of the personal injury plaintiff to select the forum and time, if at all, to assert a claim outweighs the rights of the declaratory judgment seeking party to avoid numerous lawsuits with the injured parties. *Id.* at 1168-1169. The Seventh Circuit adopted a conclusion from the Eastern District of Pennsylvania, which held **"it is not one of the purposes of the declaratory judgment acts to enable a prospective negligence action defendant to obtain a declaration of non-liability."** *Id.* at 1168 (quoting *Sun Oil Co. v. Transcontinental Gas Pipe Line Corp.*, 108 F. Supp. 280, 282 (E.D. Pa. 1952)) (emphasis added). Additionally, it is improper to file a declaratory relief complaint for the purposes of determining the validity of the defenses a potential party would assert in a personal injury action. *Id.*

Congress enacted the Declaratory Judgment Act to authorize the federal courts to issue federal declaratory judgments, but "the underlying claims determine the true nature of the dispute and principal matter in controversy." *Bou-Matic, LLC v. Ollimac Dairy, Inc.*, 2007 U.S. Dist. LEXIS 76137, *11, 2007 WL 2898675 (E.D. Cal. Sept. 28, 2007). The purpose behind the act is

to allow for early resolution **before** damage has been accrued. *Id.* at *12. Relying on *Cunningham*, the *Bou-Matic* court found that the pre-emptive federal declaratory relief action (the would-be plaintiff had not yet filed any action) was filed to select the forum for the litigation. *Id.* at *13. Prior to Bou-Matic's filing of the declaratory relief action, it sent correspondence advising that it did not want to end up in court, but decided to file the declaratory relief in an effort "to establish some basics as to the issues that might be involved" if negotiations failed. *Id.* at *15. **The Court found that Bou-Matic's letter was "an express admission that it preemptively sought to lay venue in the forum of its choice."** *Id.* (emphasis added). Additionally, the Court acknowledged that declaratory relief would be useless because all of the injuries had accrued and the claims were actualized, thus declaratory relief was improper. *Id.* MGM's actions are all driven by the motivation to shop for a preferable forum and judge in which to litigate the cases arising out of the Mandalay Bay 1 October Shooting. Such motives are not only improper in the context of the Declaratory Relief Actions, but also weigh against centralization.[34]

The Declaratory Relief should not be counted among the cases that would be centralized if MGM's Motion is granted. They were filed to force victims into a forum of MGM's choosing at a time of MGM's choosing, which is entirely contrary to the Declaratory Judgment Act. And, MGM even admitted it brought these actions for a "change of venue from state to federal court."[35] Moreover, the Declaratory Relief Actions do not require any discovery or complex issues of fact and, thus, centralization of those actions with the pending personal injury cases would not serve the convenience of any parties or witnesses or promote more efficient proceedings.

### C. COMMON ISSUES OF LAW DO NOT SUPPORT TRANSFER OR CENTRALIZATION

All of the cases related to the Mandalay Bay 1 October Shooting currently pending in the federal courts rely upon a determination regarding the application of the SAFETY Act. MGM expresses concern that there may be inconsistent rulings regarding the application of the SAFETY

---

[34] *See* Section D, *infra.*
[35] *See* Declaration of Mark P. Robinson, Jr., Exhibit "2," at ¶ 10; *see* July 17, 2018 Twitter Posting by MGM's SVP Debra DeShong, attached as Exhibit "18."

Act if the cases are not centralized.  The Panel considered the possibility of inconsistent rulings in *Eli Lilly & Co.* but stated that "consultation and cooperation among the three concerned district courts, if deemed appropriate by those courts, coupled with the cooperation of the parties, would be sufficient to minimize the possibility of conflicting pretrial rulings." *Eli Lilly & Co.*, 446 F.Supp. at 244.

Where, as here, there are few cases primarily involving common legal questions, it is even more difficult for the moving party to meet its burden to demonstrate that centralization is appropriate.  *See In re Fed. Hous. Fin. Agency*, 190 F.Supp.3d 1356, 1357 (J.P.M.L. 2016).  The defendants seeking centralization in *Fed. Hous. Fin. Agency* were focused on legal arguments related to the jurisdictional threshold that the plaintiffs would have to meet in each action.  *Id.* More specifically, the defendants were arguing that the Housing Economic Recovery Act of 2008 barred judicial review of the third amendment and that the plaintiffs lacked standing to bring their claims because the Federal Housing Financing Agency succeeded to their rights to bring any such claim.  *Id.*  The Panel stated, "these are common legal, rather than factual questions, and we have held that '[m]erely to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization'."  *Id. (quoting In re: Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F.Supp.2d 1378, 1378 (J.P.M.L. 2009)).

Moreover, MGM is responsible for manufacturing this potential concern regarding inconsistent rulings by asking nine (9) different courts across the country to consider the application of the SAFETY Act by and through the improper Declaratory Relief Actions.  The resolution of the legal question regarding the applicability of the SAFETY Act will not require any discovery and, thus, there is no danger of duplicative discovery as it relates to those Actions.  *See In re Nat'l Ass'n*, 52 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014) (denying transfer pursuant to Section 1407, the Panel stated, "[f]inally, the litigation likely will hinge on the resolution of legal questions without requiring significant, if any, discovery.")

Additionally, the MGM's concerns regarding inconsistent rulings should be mitigated by the doctrine of collateral estoppel/issue preclusion.  "The doctrine of issue preclusion prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a

prior proceeding." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (*quoting Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979). In order for issue preclusion to apply, the issue litigated in the prior action must be identical to the issue for which preclusion is sought. *Id.* at 326. Additionally, a party can only argue issue preclusion against another party that litigated the precise issue in an earlier action and lost. *Id.*

Here, MGM removed the *Sheppard* action claiming that the *Sheppard* plaintiffs' claims are all subject to the limitations and jurisdictional requirements of the SAFETY Act. MGM's Notice of Removal was filed on June 22, 2018. The *Sheppard* plaintiffs filed a Motion to Remand on June 29, 2018. MGM finally filed its Opposition to the Motion to Remand on July 27, 2018. The *Sheppard* plaintiffs' reply was filed August 1, 2018. The issue of the SAFETY Act has been fully briefed and is awaiting a ruling from the Honorable Judge Richard Boulware in the District of Nevada. Once Judge Boulware makes a ruling, that ruling will have a preclusive effect on MGM's attempts to apply the SAFETY Act in other courts. Thus, all of MGM's stated concerns regarding inconsistent rulings regarding the SAFETY Act are disingenuous and do not support centralization.

### D. MGM'S MOTIVE IS IMPROPER

Statements from MGM Executives and counsel for MGM make it clear that their primary goal is to get all litigation arising out of the Mandalay Bay 1 October Shooting into federal court. MGM cannot deny that their actions are all driven by the desire to shop for a forum MGM believes will be more favorable. They removed personal injury actions to federal court on the grounds of the inapplicable SAFETY Act. After removing those personal injury actions, MGM then took the affirmative step to file nine (9) Declaratory Relief Actions against victims of the Mandalay Bay 1 October Shooting across the country seeking a judgment that the SAFETY Act applies to any complaint arising out of the 1 October Shooting, thereby stripping MGM of any liability. As noted above, MGM's own executive stated that the primary purpose of filing the Declaratory Relief Actions is to make sure the cases proceed in federal court.[36] After filing the Declaratory Relief Actions, **but before effectuating service of those Actions**, MGM filed the instant Motion to Centralize and Transfer each of the cases at issue.

---

[36] *Id.*

MGM's motive is clear: it wants to litigate any claims arising out of the Mandalay Bay 1 October Shooting in a federal court of MGM's choosing. This Panel has previously stated, "where a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statute, we would certainly find less favor with it." *See CVS Caremark Corp.*, 684 F. Supp. 2d at 1379).[37] Centralization is not appropriate where the moving party "is not motivated by a desire to achieve the purposes for which Section 1407 was designed," but rather, by a self-serving desire to swing litigation in the moving party's favor (i.e. forum shopping, avoiding liability, and circumventing obstacles related to service or jurisdiction). *Highway Acc. Near Rockville*, 388 F. Supp. at 576. All of the actions taken by MGM in the cases it now seeks to centralize have been only to serve the interests of MGM. Its claims regarding the applicability of the SAFETY Act are without merit as are its fraudulent Declaratory Relief Actions. MGM should not receive the benefit of its improper, ulterior motives and their Motion to Transfer and Centralize should be denied.

### E. THE VICTIMS UNIFORMLY OPPOSE CENTRALIZATION

Finally, the victims of the Mandalay Bay 1 October Shooting are uniformly opposed to centralization.[38] Ninety-nine percent (99%) of the victims named in the Declaratory Relief Actions are represented by the Leadership Group and/or firms working in the coordinated group.[39] Those victims have all expressed the intent to file their lawsuits, if any, in Clark County, Nevada, only.[40] Centralization is particularly disfavored where the non-moving parties are opposed to centralization. *Cal. Wine Inorganic*, 109 F. Supp. at 1363. Here, the victims of the Mandalay Bay 1 October Shooting are all opposed to centralization, which weighs against centralization. *See CVS Caremark Corp.*, 684 F. Supp. 2d at 1379 ("Other circumstances in the present cases also weigh against centralization. A clear majority of plaintiffs, as well as defendants, oppose centralization."). The desires of the victims should be considered and given weight when ruling

---

[37] The Panel acknowledged that its primary purpose is not to determine the motives of the litigants, but does consider whether there is a clear intent from the moving party to seek centralization that is not in line with the goal of Section 1407. *See CVS Caremark Corp..*, 684 F. Supp. 2d at 1379.
[38] *See* Declarations from the Coordinated Group, Exhibit "4."
[39] *See* Declaration of Robert T. Eglet, Esq., Exhibit "1," at ¶ 16.
[40] *See* Declarations from the Coordinated Group, Exhibit "4."

on MGM's Motion. It is clear that the victims do not desire to be a part of multi-district litigation in a federal court and, thus, MGM's Motion should be denied.

## IV.   IF CENTRALIZATION IS GRANTED, WHICH IT SHOULD NOT, NEVADA IS THE APPROPRIATE DISTRICT

In determining the appropriate transferee forum, the Panel may consider numerous factors including: the convenience of the parties, location of witnesses and evidence, experience of the jurists, where the most pending cases are filed and ability of the proposed transferee forum to handle the litigation. Taking into account all of these factors, the District of Nevada, located in Las Vegas, is the appropriate transferee forum.

First, the Panel considers the convenience of the parties and counsel as an important factor when assessing the appropriateness of potential transferee districts. In analyzing potential districts, the Panel often places an emphasis on the central location of documents and witnesses because that location typically provides the most convenient forum for the litigation. *See, e.g.*, *In re Flat Glass Antitrust Litig.*, 559 F. Supp. 2d 1407 (J.P.M.L 2008) (finding Western District of Pennsylvania was appropriate transferee district because one of defendants was headquartered there, and relevant documents and witnesses would likely be found there); *In re Auto. Refinishing Paint Antitrust Litig.*, 177 F. Supp. 2d 1378, 1379 (J.P.M.L. 2001) (choosing transferee forum, in part, because "pertinent documents and witnesses can be expected to be found in [its] vicinity."); *see also In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522, 2014 U.S. Dist. LEXIS 46610, at *3 (J.P.M.L. Apr. 2, 2014) (transferring cases to the District of Minnesota, where Target has its headquarters).

Here, the District of Nevada in Las Vegas is the most convenient location for all parties and counsel. Notably, MGM takes no position regarding the location of the transferee venue.[41] MGM, however, cannot dispute that all of its relevant corporate entities (MGM Resorts International, Mandalay Bay, LLC, Mandalay Bay Corp., Mandalay Resort Group, and MGM Resort Festival Grounds, LLC) have their principal places of business in Las Vegas, Nevada. Additionally, Pisanelli Bice PLLC, co-counsel for MGM in the personal injury matters, is based

---

[41] *See* MGM's Memorandum in Support of its Motion, ECF No. 1-1, at pg. 12.

in Las Vegas, Nevada. Not only is Pisanelli Bice located in Las Vegas, but it is in the same commercial building as Eglet Prince, which is located across the street from the federal courthouse in Las Vegas.[42]  Eglet Prince and Pisanelli Bice have full access to eight (8) substantial conference rooms within the building, along with state of the art digital conferencing capabilities, and an in-building court reporting/deposition and digital recording service.[43]  The facilities within the building within which these two (2) firms are located are fully capable of accommodating all depositions and conferences for this litigation.[44]

Moreover, Plaintiffs have a strong preference for the District of Nevada serving as the transferee district for any multidistrict proceeding - preferably with Judge Richard Boulware presiding. The underlying incident took place in Las Vegas, with the two relevant sites being the Mandalay Bay Hotel and Resort and the MGM Resort Festival Grounds. As such, the pertinent evidence and key witnesses, including victims, vendors, hotel employees, corporate representatives, local law enforcement, emergency responders, and the medical providers that treated the victims immediately following the Mandalay Bay Shooting, are all located in Las Vegas, Nevada. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 528 F. Supp. 2d 1339, 1340- 41 (J.P.M.L. 2007) (transferring the centralized cases to a district where the pharmaceutical manufacturer defendant had its principal place of business and where many relevant documents and witnesses would therefore be located); *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 293 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003) (noting the proximity of the transferee district to documents and witnesses).  Eight (8) plaintiffs have already filed suit in Nevada in the *Sheppard* action, and Judge Boulware is presiding over that action where the SAFETY Act is fully briefed.[45]  Additionally, approximately ninety-nine (99%) of the victims identified by MGM in its motion are represented by the Leadership Group and/or firms working

---

[42] *See* Declaration of Robert T. Eglet, Esq., Exhibit "1," at ¶ 18.
[43] *Id.*
[44] *Id.*
[45] Two (2) of the three (3) cases pending in the Central District of California requested voluntary dismissal with the intent to file in Nevada prior to MGM filing the instant motion.

in the coordinated group, which all agree that the District of Nevada (Las Vegas) is the most convenient location for all counsel and parties.[46]

The District of Nevada is also a convenient location for parties and counsel residing outside of Nevada. As a world-renowned convention and tourist destination, Las Vegas offers an extensive selection of hotels, restaurants, and meeting facilities to accommodate all of the parties and their counsel. McCarran International Airport, which provides non-stop service from coast to coast, is located only six (6) miles from the Lloyd D. George Federal Courthouse in downtown Las Vegas. *See In re Worldcom, Inc., Sec. & ERISA Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) ("[A] litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services."); *see also In re Fed. Home Loan Mortg. Corp. Sec. & Derivative Litig.*, 303 F. Supp. 2d 1379, 1380 (J.P.M.L. 2004) (finding the Southern District of New York "is readily accessible for parties and witnesses"). All of these factors make the District of Nevada the optimal choice for a transferee forum.

Finally, despite having highly experienced jurists, the District of Nevada is an underutilized MDL court that is not overtaxed with multiple MDL actions. In fact, only two MDL cases presently reside there.[47] As discussed in *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 173 F. Supp. 2d 1377, 1380 (J.P.M.L. 2001), " centralization in this district permits the Panel to effect the Section 1407 assignment to a . . . court that i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require." *Id.* at 1380. The District of Nevada meets both of these criteria. Judge Boulware is already presiding over the *Sheppard* case, however, he is not presently overseeing an MDL proceeding and would therefore likely have significant time to devote to the litigation. As it has done in the past, the Panel should give Judge Boulware the opportunity to preside over an MDL proceeding given his ability to properly oversee complex litigation. *See, e.g., In re 21st Century Oncology Customer*

---

[46] *See* Declaration of Robert T. Eglet, Esq., Exhibit "1," at ¶ 16.
[47] *In Re: Western States Wholesale Natural Gas Antitrust Litigation*, MDL 1566; *In Re: Zappos.com, Inc. Customer Data Security Breach*, MDL No. 2357.

*Data Security Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) (selecting transferee court with judge "who has not yet had the opportunity to preside over an MDL."); *In re Cheerios Mktg. & Sales Practices Litig.*, 655 F. Supp. 2d 1368, 1369 (J.P.M.L. 2009) (assigning first MDL proceeding to Judge Sheridan; "One of the five constituent actions is already pending in that district, and Judge Peter G. Sheridan, who is presiding over that action, has the time and experience to steer this litigation on a prudent course.")

Simply stated, the District of Nevada is the most appropriate forum because it is "the center of gravity of this litigation and the focal point for discovery." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 568 F. Supp. 1250, 1251-52 (J.P.M.L. 1983); *see also In re: Apple iPhone 4 Prods. Liab. Litig.*, 746 F. Supp. 2d 1357, 1358 (J.P.M.L. 2010) (transferring actions to the Northern District of California where the headquarters, witnesses and documents of the common defendant were located). Nevada has the strongest interest in adjudicating this matter, and in protecting the large number of victims and witnesses living and working in Nevada who have been affected by this incident.

## V.   CONCLUSION

Based on the foregoing, the *Sheppard* Plaintiffs respectfully request this Panel deny MGM's Motion to Transfer and Centralize under 28 U.S.C. § 1407.

Dated August 14, 2018.

_____
Robert T. Eglet, Esq.
Robert M. Adams, Esq.
**EGLET PRINCE**

Mark P. Robinson, Jr., Esq.
Daniel S. Robinson, Esq.
**ROBINSON CALCAGNIE, INC.**

Kevin R. Boyle, Esq.
Rahul Ravipudi, Esq.
**PANISH SHEA & BOYLE LLP**