# EXHIBIT 13

Transcripts of Proceedings – 07/18/2018
(Maggiore v. MGM Resorts, et. al.)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE JOHN A. KRONSTADT

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

ARIANA SERNA MAGGIORE,                    )
                                          )
              PLAINTIFF,                   )
                                          )
VS.                                       )  CV18-05640-JAK
                                          )  CV18-05570-JAK
MGM RESORTS, ET AL.,                      )  CV18-05564-JAK
                                          )
              DEFENDANTS.                  )
_____)
                                          )
- AND RELATED MATTERS -                   )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

TUESDAY, JULY 18, 2018; 1:30 PM

_____

ALEXANDER T. JOKO, CSR NO. 12272
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CA 90012
AJ_CSR@YAHOO.COM

```
1    APPEARANCES OF COUNSEL:

2    FOR PLAINTIFF:      BRADFORD KLAGER
                         HILLIARD MARTINEZ GONZALES LLP
3                        719 SOUTH SHORELINE BOULEVARD
                         SUITE 500
4                        CORPUS CHRISTI, TX 78401

5                        CHRISTOPHER A. KANNE
                         ENGSTROM LIPSCOMB AND LACK APC
6                        10100 SANTA MONICA BOULEVARD
                         12TH FLOOR
7                        LOS ANGELES, CA 90067

8                        GARY LEE CHAMBERS
                         CHAMBERS AND NORONHA
9                        2070 NORTH TUSTIN AVENUE
                         SANTA ANA, CA 92705
10

11   FOR DEFENDANTS:     BETHANY W. KRISTOVICH
                         MUNGER TOLLES AND OLSON LLP
12                       350 SOUTH GRAND AVENUE
                         50TH FLOOR
13                       LOS ANGELES, CA 90071

14                       BRAD DENNIS BRIAN
                         MUNGER TOLLES AND OLSON LLP
15                       350 SOUTH GRAND AVENUE
                         50TH FLOOR
16                       LOS ANGELES, CA 90071-3426

17                       DANIEL BENJAMIN LEVIN
                         MUNGER TOLLES AND OLSON LLP
18                       350 SOUTH GRAND AVENUE
                         50TH FLOOR
19                       LOS ANGELES, CA 90071-3426

20                       JOHN MICHAEL GILDERSLEEVE
                         MUNGER TOLLES AND OLSON LLP
21                       350 SOUTH GRAND AVENUE
                         50TH FLOOR
22                       LOS ANGELES, CA 90071-3426

23                       MICHAEL ROBERT DOYEN
                         MUNGER TOLLES AND OLSON LLP
24                       350 SOUTH GRAND AVENUE
                         50TH FLOOR
25                       LOS ANGELES, CA 90071-3426
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1              LOS ANGELES, CALIFORNIA; TUESDAY, JULY 18, 2018
 2
                              1:30 PM
 3
                          -  -  -  -  -
 4

 5

 6              THE COURT:  ITEM NO. 15, CV18-05640, ARIANA
 7    SERNA MAGGIORE V. MGM RESORTS; ITEM NO. 16, CV18-05570,
 8    SUSAN PEREDA V. MGM RESORTS; AND ITEM NO. 17,
 9    CV18-05564, OLGA RAMIREZ V. MGM RESORTS.
10              WOULD YOU STATE YOUR APPEARANCES, PLEASE,
11    STARTING WITH PLAINTIFF'S COUNSEL AND STATE THE CASE ON
12    WHICH YOU ARE APPEARING, PLEASE.
13              MR. KANNE:  GOOD AFTERNOON, YOUR HONOR.  CHRIS
14    KANNE FOR PLAINTIFF OLGA RAMIREZ.
15              MR. CHAMBERS:  GOOD AFTERNOON, YOUR HONOR.
16    GARY CHAMBERS ON BEHALF OF PLAINTIFF SUSAN PEREDA.
17              THE COURT:  GOOD AFTERNOON.
18              BY TELEPHONE?
19              MR. KLAGER:  GOOD AFTERNOON, YOUR HONOR.  THIS
20    IS BRAD KLAGER.  I HAVE A PENDING MOTION TO APPEAR PRO
21    HAC VICE FOR ARIANA SERNA MAGGIORE.
22              THE COURT:  AND FOR THE DEFENDANTS?
23              MR. BRIAN:  YOUR HONOR, BRAD BRIAN, MIKE DOYEN
24    AND BETHANY KRISTOVICH FROM MUNGER TOLLES AND OLSON FOR
25    THE MGM DEFENDANTS.
```

```
 1            ALSO WITH ME IN THE COURTROOM IS MY
 2    PARTNER, JOHN GILDERSLEEVE.  AND ALSO ONE OUR SUMMER
 3    ASSOCIATES I WANTED TO INTRODUCE TO THE COURT, BRIAN
 4    BOSNECKER (PHONETIC) FROM A CHICAGO LAW SCHOOL WHO IS
 5    GOING TO BE CLERKING FOR YOUR COLLEAGUE JUDGE STEPH
 6    WILSON NEXT YEAR.
 7            THE COURT:  GOOD AFTERNOON.
 8            MR. FINE:  GOOD AFTERNOON, YOUR HONOR.  PAUL
 9    FINE, MIKE SCHONBUCH AND GERONIMO PEREZ AND MARY FERSCH
10    FOR DEFENDANT LIVE NATION.
11            THE COURT:  GOOD AFTERNOON.
12            ANY OTHERS APPEARANCE?
13            OKAY.  PLEASE BE SEATED.
14            MS. SUMMERS:  GOOD AFTERNOON, YOUR HONOR.
15    KELLIAN SUMMERS, CO-COUNSEL FOR LIVE NATION.
16            THE COURT:  BEFORE WE PROCEED FURTHER, I WANT
17    TO DISCLOSE, MS. KRISTOVICH IS ONE OF THE COUNSEL
18    THAT'S BEEN IDENTIFIED.  AND I KNOW MS. KRISTOVICH
19    BECAUSE SHE'S THE SPOUSE OF A PERSON I HAVE KNOWN,
20    STEVE KRISTOVICH, FOR A LONG TIME.
21            WE DON'T HAVE A -- OUR RELATIONSHIP IS
22    LIMITED TO THAT, BUT I WANTED TO MENTION THAT IN CASE
23    THAT RAISES AN ISSUE FOR ANY OF THE PLAINTIFF'S
24    COUNSEL.
25            AND IF YOU WISH TO CONFER WITH YOUR
```

1    RESPECTIVE CLIENTS ABOUT THAT, YOU CAN.  I JUST WANTED

2    TO RAISE IT AT THIS POINT.

3              I KNOW MR. BRIAN PROFESSIONALLY, BUT

4    NOT IN THE SAME -- IN QUITE THE SAME WAY.  I HAVE NEVER

5    BEEN TO HIS HOME, AND HE HAS NEVER BEEN TO MINE, FOR

6    EXAMPLE.  AT LEAST I DON'T THINK SO.

7              DO YOU THINK THAT PRESENTS --

8              MR. CHAMBERS:  THANK YOU, YOUR HONOR.  WE

9    APPRECIATE THE DISCLOSURE.  BUT, AT THIS TIME, IT

10   DOESN'T PRESENT ANY ISSUE TO OUR PLAINTIFF.

11             THE COURT:  IT'S WITHOUT PREJUDICE TO YOUR

12   CONFERRING, OF COURSE.

13             MR. KANNE:  THANK YOU, YOUR HONOR.  SAME AS

14   MR. CHAMBERS.

15             THE COURT:  THANK YOU.

16             MR. KLAGER?

17             MR. KLAGER:  I HAVE NO OBJECTION.

18             THE COURT:  OKAY.

19             AGAIN, IF, AFTER CONFERRING WITH YOUR

20   RESPECTIVE CLIENTS, YOU THINK IT RAISES AN ISSUE, LET

21   ME KNOW, PLEASE.

22             NOW, IN THE RAMIREZ MATTER, MR. KANNE, IN

23   THE JOINT REPORT, IT SAID YOU WOULD BE FILING A MOTION

24   TO DISMISS WITH LEAVE TO REFILE ELSEWHERE BY LAST

25   FRIDAY, BUT I DON'T SEE ONE ON THE DOCKET.

1              WAS ONE FILED?

2                   MR. CHAMBERS:  THAT IS CORRECT.  THAT WAS IN

3    OUR STATEMENT.

4                   OUR HOPE WAS WE COULD CONTINUE OUR MEET

5    AND CONFER EFFORTS AND REACH A STIPULATION.

6                   UNFORTUNATELY, WE HAVEN'T REACHED THAT

7    STIPULATION AT THIS TIME.

8                   BUT WHEN I PUT THAT DATE IN OUR REPORT, I

9    WAS STILL CONFIDENT THAT A STIPULATION WOULD

10   POTENTIALLY BE REACHED.  SO WE HAVE NOT FILED IT YET,

11   BUT WE'RE STILL PLANNING ON FILING IT THIS WEEK.

12                  THE COURT:  HAVE YOUR DISCUSSIONS WITH THE

13   DEFENDANTS ENDED?

14                  MR. CONNIE:  UNFORTUNATELY, ON THAT PARTICULAR

15   ISSUE, I BELIEVE THEY HAVE.

16                  MR. BRIAN:  THEY HAVE ENDED, YOUR HONOR.  I

17   CAN EXPLAIN THAT, IF YOUR HONOR NEEDS EXPLANATION?

18                  THE COURT:  NOT YET.

19                  THERE IS A MOTION PENDING IN THE PEREDA

20   MATTER; CORRECT?

21                  IT WAS FILED --

22                  MR. CHAMBERS:  YES, YOUR HONOR.

23                  THE COURT:  WELL, THERE'S A MOTION TO REMAND

24   IN MAGGIORE.

25                  THERE'S A MOTION TO DISMISS WITH LEAVE TO

1    REFILE IN PEREDA.

2                    AND THERE'S A MOTION THAT IS EXPECTED IN

3    RAMIREZ.

4                    IS THAT RIGHT?

5            MS. KRISTOVICH:  THERE ARE TWO ISSUES HERE.

6    THERE ARE MOTIONS TO DISMISS AND A MOTION FOR JUDGMENT

7    ON THE PLEADINGS FILED BY DEFENDANT.  AND THEN THERE

8    ARE ALSO THE PLAINTIFFS' SIDE.

9            THE COURT:  NO, I UNDERSTAND, BUT -- OKAY.

10                    WELL, WHAT I HAVE IN MIND -- AND THEN,

11   LAST FRIDAY, THE -- ANOTHER ACTION WAS BROUGHT,

12   CV18-6113.

13                    HAS THAT BEEN SERVED?

14           MR. BRIAN:  IT HAS NOT BEEN SERVED YET, YOUR

15   HONOR.

16           THE COURT:  OKAY.  AND ARE PLAINTIFF'S COUNSEL

17   HERE AWARE OF THE FILING OF THAT ACTION?

18           MR. KANNE:  I FOUND OUT THIS MORNING ON MPR.

19   SO I DON'T HAVE ANY NOTICE OF ANY OF THE ISSUES OR WHAT

20   THE COMPLAINT ACTUALLY SAYS.

21           THE COURT:  OKAY.  WELL, THE PLAINTIFFS HERE

22   ARE NOT NAMED AS DEFENDANTS IN THIS DECLARATORY RELIEF

23   ACTION; CORRECT, MR. BRIAN?

24           MR. BRIAN:  THEY ARE NOT, YOUR HONOR.

25           THE COURT:  BECAUSE THOSE ISSUES ARE ALREADY

1    PRESENTED IN THE COUNTER-CLAIMS; CORRECT?

2              MR. BRIAN:   THAT'S CORRECT.

3              THE COURT:   OKAY.   WELL, LET ME TALK ABOUT THE

4    ONE -- THE CASES THAT ARE PRESENTLY HERE.

5                   IF -- AND I HAVE NO VIEW ON THIS YET

6    BECAUSE ONE MOTION TO DISMISS IN THE RAMIREZ MATTER

7    HASN'T BEEN FILED.   THE OTHER MOTION HASN'T BEEN FULLY

8    BRIEFED.

9                   BUT IF THE MOTIONS TO DISMISS IN PEREDA

10   AND RAMIREZ WERE GRANTED, THEN THE ONLY REMAINING

11   MATTER WOULD BE IN THE MAGGIORE MATTER.

12                  AND IF THE MOTION TO REMAND IS GRANTED IN

13   THAT MATTER, THEN THERE WOULD BE NO MATTERS OF THESE

14   THREE PENDING, I BELIEVE.

15                  DO YOU AGREE WITH THAT, MR. BRIAN?

16             MR. BRIAN:   I DO, YOUR HONOR.

17                  THE FUNDAMENTAL ISSUE, OF COURSE, IS

18   WHETHER THERE'S EXCLUSIVE FEDERAL JURISDICTION.

19             THE COURT:   I UNDERSTAND.

20                  AND THE MOTION TO DISMISS, TO WHICH

21   MS. KRISTOVICH REFERRED, I THINK IS, IN PART, THAT THE

22   NEGLIGENCE CAUSE OF ACTION IS NOT ADEQUATELY PLEADED;

23   CORRECT?

24             MR. BRIAN:   YES.   WE HAD RAISED ISSUES OF DUTY

25   AND CAUSATION, YOUR HONOR.

1        THE COURT:  OKAY.  AND -- JUST A MINUTE.

2             IS A REQUEST FOR MDL LITIGATION STILL

3    PENDING?

4        MR. BRIAN:  WE HAVE NOT YET FILED.  WE

5    ANTICIPATE FILING A MOTION FOR MDL LITIGATION IN SHORT

6    ORDER, PERHAPS AS EARLY AS THIS WEEK.

7        THE COURT:  OKAY.  IF YOU ANTICIPATE BRINGING

8    AN MDL MOTION, HOW WOULD THAT, IN YOUR VIEW, AFFECT --

9    MR. BRIAN, HOW WOULD THAT AFFECT THE RECENTLY-FILED

10   ACTION AGAINST THE INDIVIDUAL PARTIES FOR DECLARATORY

11   RELIEF?

12       MR. BRIAN:  THOSE WOULD BE THE SUBJECT OF --

13   THAT AND OTHER LAWSUITS WOULD BE THE SUBJECT OF THE MDL

14   MOTION, AS WOULD THESE THREE ACTIONS HERE.

15       THE COURT:  OKAY.  AND LET ME ASK YOU A --

16       MR. BRIAN:  AND JUST IN FULL DISCLOSURE, WE

17   ANTICIPATE THERE MAY BE ADDITIONAL DECLARATORY RELIEF

18   ACTIONS FILED VERY SOON.

19       THE COURT:  IN OTHER STATES?

20       MR. BRIAN:  PERHAPS.  AND PERHAPS ANOTHER ONE

21   HERE.

22       THE COURT:  THE DECLARATORY RELIEF ACTION

23   THAT'S BEEN FILED AS OF NOW, THE 6113 CASE, ARE ALL OF

24   THE DEFENDANTS CALIFORNIA CITIZENS OR YOU BELIEVE ARE

25   CALIFORNIA CITIZENS?

1      MR. BRIAN:  WE BELIEVE ALL OF THEM ARE

2  CALIFORNIA RESIDENTS.  AND THAT'S WHAT WE BASED THE

3  LAWSUIT ON.  WE SPENT TIME TRYING TO DETERMINE THAT;

4  BUT, YES, WE HAVE MADE THAT DETERMINATION.

5      THE COURT:  DO ALL -- DO YOU THINK -- DO ALL

6  RESIDE WITHIN THIS DISTRICT?

7      MR. BRIAN:  I'M GOING TO DEFER TO

8  MS. KRISTOVICH ON THAT QUESTION, YOUR HONOR.

9      MS. KRISTOVICH:  YOUR HONOR, WE DON'T HAVE

10  PERFECT VISIBILITY.  WE KNOW THAT AT LEAST MANY OF THEM

11  RESIDE WITHIN THIS DISTRICT.  SO WE THINK VENUE IS

12  PROPER FOR THAT REASON.

13      THE COURT:  AS TO THOSE -- EVEN AS TO THOSE

14  WHO DON'T RESIDE WITHIN THE DISTRICT?

15      MS. KRISTOVICH:  CORRECT, YOUR HONOR.

16      OUR RESEARCH SUGGESTS THAT, SO LONG AS

17  ONE DEFENDANT RESIDES WITHIN THE DISTRICT, VENUE IS

18  APPROPRIATE.

19      MR. BRIAN:  BUT WE THINK IT'S MANY.  WE JUST

20  CAN'T VERIFY IT'S ALL.

21      THE COURT:  JUST A MINUTE.

22      AND, MR. BRIAN, WITH RESPECT TO THE ISSUE

23  UNDER THE SAFETY ACT, WHICH IS RAISED AS PART OF THE

24  COUNTER-CLAIMS TO WHICH WE'VE REFERRED -- IT MIGHT ALSO

25  BE AN AFFIRMATIVE DEFENSE.  I DON'T KNOW HOW YOU HAVE

1    FRAMED IT.  BUT IT'S ALSO A BASIS FOR THE -- I BELIEVE

2    THE OPPOSITION TO THE MOTION TO REMAND; CORRECT?

3           MR. BRIAN:  CORRECT.

4           THE COURT:  IF THAT ISSUE IS PRESENTED IN A

5    SINGLE CASE AND DETERMINED, WHY WOULD YOU NEED TO HAVE

6    800 PLAINTIFFS NAMED IN WHICH THE SAME ISSUE -- 700

7    MORE PLAINTIFFS NAMED TO -- ON THAT ISSUE?

8           MR. BRIAN:  THERE IS -- THERE MAY BE -- FIRST

9    OF ALL, THERE MAY WELL BE -- WE BELIEVE THERE'S

10   DIVERSITY JURISDICTION, AS WELL AS THE SAFETY ACT

11   JURISDICTION IN THE CASE WE FILED HERE.  AND WE THINK

12   THE COMMON ISSUE OF THE SAFETY ACT APPLIES --

13          THE COURT:  THERE'S DIVERSITY JURISDICTION IN

14   WHICH CASE?

15          MR. BRIAN:  IN THE DECLARATORY RELIEF ACTION

16   CASE.

17          THE COURT:  OKAY.  BUT WHY WOULD YOU NEED TO

18   HAVE SEVERAL-HUNDRED DEFENDANTS NAMED TO ADDRESS THE

19   DECLARATORY RELIEF ISSUE OF THE SAFETY ACT?

20          MR. BRIAN:  I THINK MY COLLEAGUE, MR. DOYEN,

21   WANTS TO ADDRESS THAT QUESTION.

22          MR. DOYEN:  WE DID LOOK AT THAT, YOUR HONOR.

23   AND AS THE COURT IS NO DOUBT AWARE, IT'S -- WE HAD

24   FOUND IT LESS CLEAR WHAT WOULD BE THE COLLATERAL

25   CONSEQUENCES TO OTHER PEOPLE THAT WEREN'T PARTY TO THE

1    LITIGATION IF WE'RE BOUND BY WHAT HAPPENS TO US BECAUSE

2    WE HAVE AN OPPORTUNITY TO APPEAR.  BUT OTHER DEFENDANTS

3    WHO WE'VE NAMED WHO ARE NOT IN THIS CASE WOULD HAVE AN

4    ARGUMENT THAT THEY'RE NOT BOUND BY THAT.

5              NOW, IT'S POSSIBLE THAT WE'LL HAVE A

6    DISCUSSION WITH PLAINTIFFS' LAWYERS.  THESE ARE ALL

7    REPRESENTED PARTIES.  AND MAYBE WE CAN AGREE ON

8    SOMETHING THAT WAS MORE EXPEDITIOUS THAN WHAT WE HAVE

9    FILED SO FAR.  BUT I DON'T THINK IT'S CLEAR -- OR AT

10   LEAST IT WASN'T SUFFICIENTLY CLEAR TO US THAT, IF WE

11   COME IN AND OBTAIN -- AND WE ARE SUCCESSFUL, THAT THAT

12   BINDS EVERYBODY ELSE WHOSE IS NOT A PARTY TO THE CASE.

13             MR. BRIAN:  IDEALLY, YOUR HONOR, WE WOULD FILE

14   AN MDL MOTION.  IT WOULD BE GRANTED.  AND THIS

15   DISPOSITIVE ISSUE, WE BELIEVE, WOULD BE DECIDED BY ONE

16   JUDGE AND WOULD APPLY TO ALL THE CASES.

17             THE COURT:  NO, I UNDERSTAND.

18             AGAIN, THAT -- YOU'RE NOT -- PLAINTIFF'S

19   COUNSEL HERE IS NOT REPRESENTING ANY OF THE PROPOSED

20   DEFENDANTS IN THAT DECLARATORY RELIEF ACTION.  BUT I

21   JUST WANTED TO MAKE SURE I UNDERSTOOD ITS PROCEDURAL

22   STATUS IN LIGHT OF THE MDL ISSUES.

23             WELL, MY VIEW IS THIS, THAT THERE ARE A

24   LOT OF MOVING PARTS HERE.  BUT, AT THIS POINT WHERE

25   IT'S UNKNOWN WHETHER THERE WILL BE AN MDL PROCEEDING,

```
 1    AND I DON'T -- THERE'S BEEN NO -- THE DECLARATORY
 2    RELIEF ACTION THAT WE'VE BEEN DISCUSSING HAS JUST BEEN
 3    FILED, AND I DON'T THINK IT'S BEEN SERVED YET,
 4    CERTAINLY NOT ON ALL OF THESE DEFENDANTS.  THE ONE
 5    MOTION TO DISMISS HASN'T BEEN FILED YET.  THE MOTION
 6    FOR -- TO REMAND IS SCHEDULED FOR HEARING.
 7              THERE'S A LIMITED AMOUNT THAT I CAN DO,
 8    BUT WHAT I HAVE IN MIND ARE THE FOLLOWING DATES:
 9    THERE'S BEEN AN ISSUE PRESENTED CONCERNING WHETHER
10    DISCOVERY SHOULD BE LIMITED TO NON-SAFETY ISSUES.  AND
11    I'M DISINCLINED TO DO THAT.
12              I THINK THAT THE -- IT'S CERTAINLY
13    REASONABLE -- THERE'S CERTAINLY A REASONABLE
14    PROBABILITY THAT THE DETERMINATION OF THE SAFETY ISSUE,
15    IF IT'S PRESENTED IN THIS INDIVIDUAL CASE OR THESE
16    INDIVIDUAL CASES, WOULD REQUIRE, AS YOU HAVE
17    ACKNOWLEDGED, SOME DISCOVERY AND A MOTION, WHICH WOULD
18    PERHAPS BE A MOTION FOR SUMMARY JUDGMENT.  I'M NOT
19    PERSUADED THAT IT WOULD BE EFFICIENT TO STAY ALL OTHER
20    DISCOVERY WHILE THAT DISCOVERY PROCEEDS INSOFAR AS, FOR
21    EXAMPLE, SOME OF THE SAME INDIVIDUALS MAY BE SUBJECT TO
22    DEPOSITIONS IN BOTH THE SAFETY ISSUE AND THE NON-SAFETY
23    ISSUE.  AND SO I'M DISINCLINED TO DO THAT.
24         MR. BRIAN:  CAN I OFFER SOME --
25         THE COURT:  SECOND, HAVE THERE BEEN ANY
```

1   DISCUSSIONS ABOUT COORDINATING DISCOVERY AMONG THE

2   PRESENTLY-FILED CASES IN DIFFERENT DISTRICTS?

3           MR. BRIAN:  NOT IN ANY FORMAL SENSE, YOUR

4   HONOR.

5               WE ARE STRONGLY OF THE VIEW THAT THERE

6   WILL NEED TO BE COORDINATION REGARDLESS OF WHETHER

7   THERE'S AN MDL.

8           THE COURT:  I AGREE.

9               DO YOU HAVE ANY ISSUES WITH THAT?

10          MR. KANNE:  NO, YOUR HONOR.

11          MR. CHAMBERS:  NO, YOUR HONOR.

12          MR. BRIAN:  NO REMAND MOTION HAS BEEN FILED

13  YET, I BELIEVE, IN THE MAGGIORE CASE.  I THINK IT'S

14  CONTEMPLATED.  THEY INDICATED THEY PLAN TO; BUT I DON'T

15  BELIEVE THAT WE'VE SEEN ONE FILED, UNLESS I'VE MISSED

16  IT.

17          THE COURT:  HAVE YOU FILED THAT MOTION?

18          MR. KANNE:  NO.  THERE'S NO MOTION TO REMAND.

19  IT'S A MOTION TO DISMISS WITHOUT PREJUDICE THAT'S BEEN

20  FILED.  IT WAS FILED LAST FRIDAY, JULY 13TH.

21          THE COURT:  IN MAGGIORE, YOU DON'T PLAN TO

22  FILE A MOTION TO REMAND?

23          MR. CHAMBERS:  NO, I'M ON PEREDA.  THAT'S BEEN

24  FILED.

25              BUT MAGGIORE MIGHT HAVE FILED A MOTION TO

1    REMAND.  I DON'T KNOW.

2                MR. KLAGER:  THE REMAND MOTION IS NOT YET DUE

3    IN MAGGIORE.  IT IS DUE JULY 26TH.  AND IT'LL BE FILED

4    SOMETIME ON JULY 26 OR BEFORE.

5                THE COURT:  OKAY.

6                MR. BRIAN:  WE DO THINK -- ONE OF THE REASONS

7    WE HAVE PROPOSED THE LIMITING DISCOVERY, WE THINK THE

8    REMAND MOTION -- WE DON'T THINK THE MOTIONS TO DISMISS,

9    WE DON'T THINK THAT'S PROCEDURALLY PROPER BECAUSE OF

10    THE ISSUE OF EXCLUSIVE JURISDICTION.

11                THE ISSUE ON THE REMAND MOTION WILL BE

12    WHETHER OR NOT THE COURT HAS EXCLUSIVE JURISDICTION,

13    WHICH IS ONE OF THE REASONS WE BELIEVE THAT THE

14    DISCOVERY SHOULD BE LIMITED TO THOSE ISSUES.  THERE MAY

15    WELL BE FACTUAL ISSUES THAT BEAR ON THAT.

16                THE COURT:  OKAY.  WELL, I UNDERSTAND.

17                BUT, AT THIS POINT, I'M NOT PERSUADED

18    THAT THE ONLY DISCOVERY SHOULD BE CONCERNING THE

19    SAFETY.  I DON'T KNOW ENOUGH ABOUT IT YET.

20                AND I THINK THAT TO THE EXTENT -- I THINK

21    A MORE APPROPRIATE APPROACH IS, NOT TO SO LIMIT

22    DISCOVERY IF -- AND, AGAIN, THERE ARE A LOT OF MOVING

23    PARTS HERE.

24                MR. BRIAN:  THE ONLY THING I WOULD SAY, YOUR

25    HONOR, IS, MY UNDERSTANDING IS THE PLAINTIFFS EITHER

1    HAVE DISMISSED OR INTEND TO DISMISS LIVE NATION/CSC.

2                IF WE'RE THEN CORRECT UNDER THE SAFETY

3    ACT, THERE WILL BE NO CASE AGAINST ANY OF THE

4    DEFENDANTS IN THIS COURTROOM, WHICH IS WHY WE THINK

5    SUCH DISCOVERY SHOULD BE SO LIMITED.  BUT I'M STRIKING

6    OUT ON THAT ONE, SO I'LL MOVE ON.

7            THE COURT:  I'M JUST NOT PERSUADED THAT, BASED

8    ON THE LIMITED AMOUNT THAT'S BEEN PRESENTED AT THIS

9    POINT, THAT ALL DISCOVERY SHOULD BE STAYED ON THAT ONE

10   ISSUE.  I JUST -- LIMITED TO THAT ONE ISSUE.

11               AND, AMONG OTHER THINGS, FOR EXAMPLE, DO

12   YOU CONTEND THAT NONE OF THE DISCOVERY THAT WOULD BE

13   CONDUCTED WITH RESPECT TO THE SAFETY ISSUES WOULD BEAR

14   ON THE NON-SAFETY ISSUES?

15           MR. BRIAN:  NO.  THERE IS PROBABLY SOME

16   DISCOVERY THAT WOULD BEAR ON THE SAFETY ISSUES THAT

17   WOULD BE RELEVANT TO THE UNDERLYING FACTUAL AND LEGAL

18   ISSUES IN THE CASE.  I AGREE WITH THAT.

19           THE COURT:  WHAT'S -- DO YOU DISAGREE WITH

20   THAT?

21           MR. KANNE:  NO, I DON'T DISAGREE, YOUR HONOR.

22           THE COURT:  LET ME ASK -- WELL, JUST A MINUTE.

23               MR. CHAMBERS, MR. KANNE AND        MR.

24   KLAGER, LET ME ASK YOUR RESPECTIVE VIEWS ON THIS:

25               DOES IT MAKE SENSE FOR ME TO SET DATES

1   TODAY, OR DOES IT MAKE SENSE TO WAIT SOME TIME TO

2   DETERMINE WHAT WILL HAPPEN ON THE MDL FRONT AND/OR ON

3   THE SEPARATELY-FILED DECLARATORY RELIEF ACTION, WHICH

4   MR. BRIAN SAID WOULD BE AN ELEMENT OF AN MDL

5   APPLICATION?

6           MR. CHAMBERS:  YOUR HONOR, FROM PLAINTIFF'S

7   PERSPECTIVE, WE BELIEVE IT WOULD BE APPROPRIATE TO WAIT

8   AT THIS TIME.

9               WE'RE ALSO WAITING ON THE DISTRICT COURT

10  IN NEVADA'S RULING ON THE MOTION TO REMAND.

11              AND AT THIS TIME, TO -- FROM PLAINTIFF'S

12  PERSPECTIVE, IT JUST MAKES A LOT MORE SENSE FOR US TO

13  WAIT AT THIS TIME.

14          MR. KANNE:  I WOULD AGREE WITH THAT, YOUR

15  HONOR.  WE HAVE THE MOTION TO DISMISS AND THE MOTION

16  FOR JUDGMENT ON THE PLEADINGS THAT ARE ALREADY GOING TO

17  BE HEARD ON OCTOBER 1ST.  WE THINK IT MAY BE AFTER THAT

18  WE CAN TALK ABOUT DATES, WHATEVER THE DETERMINATION IS.

19          THE COURT:  MR. KLAGER WHAT'S YOUR VIEW?

20          MR. KLAGER:  YOUR HONOR, MAY I PRESUME THAT --

21  I'M NOT CLEAR ON WHETHER YOU HAVE TAKEN UP THE PRO HAC

22  VICE APPLICATION.  I --

23          THE COURT:  I HAVEN'T TAKEN UP THE PRO HAC

24  VICE APPLICATION.  IT NEEDS TO BE PROPERLY FILED AND

25  CONSIDERED AND RULED ON.

1       I'M ALLOWING YOU TO APPEAR TODAY

2   TELEPHONICALLY NOTWITHSTANDING THAT THAT APPLICATION

3   HAS NOT YET BEEN APPROVED.

4           MR. KLAGER:  WELL, I JUST WANT TO MAKE SURE I

5   DON'T DO ANYTHING THAT I'M NOT AUTHORIZED TO DO.

6           SO IT'S MY UNDERSTANDING YOU HAVE NOT

7   GIVEN ME PERMISSION TO APPEAR FOR MS. MAGGIORE?

8           THE COURT:  IF YOU DON'T WANT TO APPEAR, IT'S

9   FINE BECAUSE --

10          MR. KLAGER:  I DO.  I JUST DON'T WANT TO --

11  BUT I'M NOT GOING TO STATE ANY OBJECTIONS AT THIS

12  POINT.

13          THE COURT:  OKAY.  WELL, THEN WHY -- I TAKE IT

14  THEN YOUR REQUEST TO APPEAR TELEPHONICALLY WAS JUST TO

15  OBSERVE THE -- OR LISTEN TO THE HEARING, NOT

16  PARTICIPATE IN IT?

17          MR. KLAGER:  WELL, I HAVE -- I DO HAVE A --

18  THE APPLICATION ON FILE.  AND I WAS HOPING THAT --

19          THE COURT:  I DON'T HANDLE ORAL MOTIONS.

20  THOSE ARE HANDLED THROUGH THE NORMAL PROCEDURAL

21  PROCESS.  AND THIS ONE WILL BE PROCESSED IN DUE COURSE.

22          MR. KLAGER:  THANK YOU, YOUR HONOR.

23          WELL, TO THE EXTENT THAT YOU ARE

24  PERMITTING ME TO APPEAR AND ANSWER, I'M NOT -- I THINK

25  THAT THE DEADLINE ISSUES ARE HOPEFULLY RESOLVED BY THE

1    MOTION TO REMAND.  AND I'M NOT SURE THE CASES ARE GOING

2    TO BE -- HOW THEY WOULD BE CONSOLIDATED, IF THEY END UP

3    BEING CONSOLIDATED.  BUT I COULD IMAGINE THAT COULD

4    HAPPEN AT A LATER TIME.

5              THE COURT:  THANK YOU.

6                   DO YOU WANT TO ADD ANYTHING?

7              MR. KANNE:  NO, YOUR HONOR.

8              THE COURT:  MR. BRIAN?

9              MR. BRIAN:  WE HAVE NO OBJECTION TO POSTPONING

10   SETTING THE DATES, YOUR HONOR.

11             THE COURT:  OKAY.

12             MR. BRIAN:  I DO HAVE ONE REQUEST AT SOME

13   POINT AS TO THE DATE OF THE HEARING THAT'S BEEN

14   SCHEDULED.  YOUR HONOR PICKED OCTOBER 1ST.  THAT

15   HAPPENS TO BE THE ONE-YEAR ANNIVERSARY OF THE HORRIFIC

16   EVENT THAT LED US HERE TODAY.

17                  I DON'T KNOW EXACTLY WHAT'S BEING PLANNED

18   FOR THAT DAY, BUT I KNOW THERE'S GOING TO BE THINGS

19   PLANNED THAT ARE GOING TO OCCUPY OUR CLIENT.  AND IF IT

20   WORKED FOR THE COURT AND COUNSEL, IF THE COURT WOULD BE

21   WILLING TO MOVE THAT A WEEK OR TWO BEFORE OR AFTER, I

22   WOULD JUST ASK THE COURT'S INDULGENCE.

23             THE COURT:  JUST A MINUTE.

24                  DO YOU EXPECT A CLIENT REPRESENTATIVE TO

25   BE PRESENT AT THE HEARING?

```
 1              MR. BRIAN:  I DON'T KNOW.  BUT ON THAT MOTION,
 2     I WOULD ACTUALLY EXPECT THAT SOME MEMBER OF THE LAW
 3     DEPARTMENT WOULD BE AT THE MOTION.
 4              BUT IT'S BEYOND THAT, YOUR HONOR.  IT'S
 5     GOING TO BE A VERY EMOTIONAL DAY FOR MY CLIENTS.
 6              THE COURT:  OKAY.  THANK YOU.
 7              MR. BRIAN, DO YOU HAVE A TIME ESTIMATE AS
 8     TO WHEN -- ASSUMING THAT YOU FILE, AS YOU STATED,
 9     WITHIN THE RELATIVELY SHORT TIME FRAME, THE APPLICATION
10     ON THE MDL SIDE, DO YOU HAVE ANY ESTIMATE OF WHEN THAT
11     WOULD BE DECIDED?
12              MS. KRISTOVICH:  YOUR HONOR, MOST OF OUR
13     RESEARCH SUGGESTS THAT THE MDL PETITIONS ARE USUALLY
14     DECIDED WITHIN TWO TO THREE MONTHS OF BEING FILED.
15              THE COURT:  AND THE EXPECTED DATE OF FILING IS
16     WITHIN TWO WEEKS?
17              MR. BRIAN:  I THINK IT'S WITHIN A WEEK.  WE
18     HOPE TO FILE THIS WEEK.
19              THE COURT:  IF THAT OCCURS, YOU WOULD EXPECT A
20     RESPONSE BY OCTOBER?
21              MR. BRIAN:  I THINK THAT SOUNDS ABOUT RIGHT,
22     BY MY MATH.
23              MS. KRISTOVICH:  YES, YOUR HONOR.  AGAIN, IT'S
24     NOT PRECISE, BUT THAT'S ROUGHLY.
25              THE COURT:  DO YOU HAVE ANY VIEW ON THIS?
```

```
 1              MR. KANNE:  NO, YOUR HONOR.
 2              MR. CHAMBERS:  NO, YOUR HONOR.
 3              THE COURT:  OKAY.  JUST A MINUTE.
 4              MY VIEW IS, AGAIN, WE DON'T KNOW
 5    PRECISELY WHEN THE MDL DECISION WOULD BE MADE.  BUT I
 6    THINK THERE WOULD BE VALUE IN HAVING THAT INFORMATION
 7    IN CONNECTION WITH THE OTHER MOTIONS THAT ARE PENDING.
 8              THE MOTIONS -- FOR EXAMPLE, THE MOTIONS
 9    TO DISMISS WITH LEAVE TO AMEND TO FILE IN NEVADA COULD
10    BE AFFECTED BY WHAT HAPPENS ON THE MDL SIDE.
11              DO YOU AGREE WITH THAT?
12              MR. KANNE:  I DON'T THINK -- WELL, I DISAGREE
13    JUST A LITTLE BIT IN TERMS OF, I THINK THE NEVADA COURT
14    IS THE RIGHT COURT TO BE HEARD IN.  AND I DON'T KNOW IF
15    THERE'S -- I THINK THERE'S A MOTION TO REMAND RIGHT NOW
16    IN THAT COURT.
17              BUT I WOULD CONCUR THAT THE MDL -- THE
18    MOTION TO DISMISS WILL BE AFFECTED BY THE MDL.
19              THE COURT:  WHAT IS YOUR VIEW ON THAT?
20              MR. CHAMBERS:  I'M WITH HIM, YOUR HONOR.
21              THE COURT:  OKAY.  MR. BRIAN, YOU AGREE WITH
22    THAT?
23              MR. BRIAN:  I DO, YOUR HONOR.
24              THE COURT:  SO I THINK WHAT I'LL DO AT THIS
25    POINT IS THE FOLLOWING:
```

```
1              I'LL SET -- I THINK IT'S ALSO VALUABLE TO
2     HAVE ALL THESE HEARINGS AT THE SAME TIME.  IT'S MORE
3     EFFICIENT.  SO I'LL RESET THEM ALL.  INSTEAD OF OCTOBER
4     1, I'D RESET THEM ALL FOR OCTOBER 29.
5              BUT I'D LIKE THE BRIEFING DONE ON A MORE
6     ACCELERATED BASIS GIVEN THE NUMBER OF MOTIONS.  I DON'T
7     WANT TO GET ALL THE REPLY BRIEFS AT THE SAME TIME.  SO
8     PERHAPS YOU CAN -- WELL --
9              MR. BRIAN:  CAN WE MEET AND CONFER AND PROPOSE
10    A SCHEDULE?
11             HOW LONG BEFORE THE HEARINGS WOULD YOU
12    LIKE TO RECEIVE THE REPLY BRIEFS?
13             THE COURT:  WELL, IDEALLY, IF WE ARE -- I'D
14    LIKE TO RECEIVE THEM FOUR WEEKS BEFORE.
15             MR. BRIAN:  WE WILL NEGOTIATE A SCHEDULE
16    CONSISTENT WITH THAT.
17             THE COURT:  DOES THAT WORK?
18             MR. KANNE:  YES, YOUR HONOR.
19             MR. CHAMBERS:  YES, YOUR HONOR.
20             THE COURT:  MR. KLAGER, ANYTHING ON THAT
21    ISSUE?
22             MR. KLAGER:  NO, YOUR HONOR.
23             THE COURT:  OKAY.  CONFER ABOUT THAT AND
24    SUBMIT A PROPOSED ORDER.
25             I DON'T WANT TO IMPOSE UNDUE BURDENS ON
```

```
 1    THE PARTIES IN TERMS OF THIS BRIEFING.  BUT GIVEN THE
 2    CURRENT DATE WAS OCTOBER 1, I WAS THINKING IT MIGHT NOT
 3    BE TOO BURDENSOME TO GET THIS DONE EARLIER SO I CAN
 4    HAVE THOSE BRIEFS IN ADVANCE.
 5               I WOULD ALSO, MR. BRIAN, LIKE THE MGM
 6    TO -- AFTER THE MOTION IS FILED ON THE MDL SIDE, I
 7    WOULD LIKE YOU TO FILE A NOTICE HERE OF THE FILING OF
 8    THAT MOTION.
 9               AND THEN I'D LIKE YOU TO FILE A STATUS
10    REPORT EVERY 30 DAYS JUST AS TO THE -- WHAT, IF ANY,
11    DEVELOPMENTS THERE HAVE BEEN WITH RESPECT TO THAT
12    MOTION.  NOTHING DETAILED, JUST WHERE THINGS STAND.
13               AND THEN WITHIN SEVEN DAYS OF A DECISION
14    ON THAT MOTION, PLEASE FILE A NOTICE OF THAT.  NOT TO
15    SAY EVERYONE WOULDN'T HAVE SEEN IT IN THE DOCKET AND SO
16    ON, BUT IT WOULD BE HELPFUL.
17               MS. KRISTOVICH:  YES, YOUR HONOR.
18               THE COURT:  OKAY.  IS THERE ANYTHING OTHER
19    DEFENSE COUNSEL WANTED TO RAISE ON THESE ISSUES?
20               MR. FINE:  YOUR HONOR, ON BEHALF OF LIVE
21    NATION, WE WOULD ASK THAT DISCOVERY BE STAYED UNTIL THE
22    RULING ON THE MDL MOTION BECAUSE WE NEED TO COORDINATE
23    WITH LOTS OF FIRMS, LOTS OF PLAINTIFFS.
24               THE COURT:  WHAT ARE YOUR VIEWS ON THAT?
25               MR. KANNE:  I THINK THAT -- I MEAN, I WOULD
```

1    REQUEST THAT IT WASN'T STAYED.  THAT WE START DISCOVERY

2    JUST SO THAT WE CAN START PREPARING BECAUSE I KNOW

3    THERE'S MOTIONS FOR SUMMARY JUDGMENTS COMING.

4    ESPECIALLY WITH THE SAFETY ACT, I WOULD REQUEST THAT

5    THE DISCOVERY IS OPEN.

6         MR. BRIAN:  WE WOULD CONCUR IN LIVE NATION'S

7    REQUEST, YOUR HONOR.  I THINK IT MAKES SENSE BECAUSE

8    THERE'S GOING TO BE THE NEED FOR EXTENSIVE COORDINATION

9    ON ALL THESE MATTERS.

10        THE COURT:  I THINK THERE WOULD BE A LOT OF

11   COORDINATION.

12            AT THE SAME TIME, IN TERMS OF DOCUMENTARY

13   DISCOVERY, WOULD THAT BE MATERIALLY DIFFERENT FROM CASE

14   TO CASE IN TERMS OF THE DOCUMENTS THAT THE DEFENDANT

15   WOULD BE PRODUCING?

16        MR. FINE:  YOUR HONOR, I DON'T BELIEVE SO,

17   EXCEPT THAT THERE'S -- THESE ARE SECURITY PLANS, AND

18   THEY'RE HIGHLY CONFIDENTIAL.  THEY CAN'T JUST BE

19   FLOATING AROUND IN THE --

20        THE COURT:  I UNDERSTAND THAT.  THAT'S A

21   PROTECTIVE ORDER ISSUE.

22            I THINK THE QUESTION IS, WHAT -- IT'S NOT

23   SO MUCH AS, YOU'RE OBLIGATED TO PRODUCE DOCUMENTS

24   STARTING TOMORROW.  I DON'T THINK THERE ARE ANY

25   REQUESTS PENDING.  INDEED, SOME OF THE PLAINTIFFS ARE

1    SEEKING TO HAVE THE CASE DISMISSED.  SO, PRESUMABLY,

2    YOU WOULD NOT BE SEEKING DISCOVERY, AT LEAST INITIALLY,

3    OR IF A PLAINTIFF IS SEEKING -- WELL, WHATEVER.

4            MR. BRIAN:  THE PROBLEM WE FACE, OF COURSE,

5    AND I THINK WHAT COUNSEL WAS REALLY ALLUDING TO, IS

6    THAT WE GET DOCUMENTS FROM COUNSEL HERE.  AND WE GO

7    THROUGH MILLIONS OF PAGES OF DOCUMENTS.  AND THEN WE'RE

8    GOING TO GET A SLIGHTLY DIFFERENT REQUEST.  AND WE

9    DON'T QUITE START OVER, BUT WE KIND OF START OVER.

10           THE COURT:  WELL, I UNDERSTAND.

11           I THINK -- DO YOU HAVE A VIEW -- WELL, I

12   THINK YOU'VE GOT TO BE PRACTICAL HERE.  THERE'S A LOT

13   OF BALLS IN MOTION.  AND I THINK THAT IT DOES MAKE

14   SENSE TO TRY TO COORDINATE DISCOVERY DEPENDING ON HOW

15   THIS LITIGATION IS GOING TO PROCEED.  IS THERE GOING TO

16   BE A SUPERIOR COURT PROCEEDING?  IS THERE GOING TO BE A

17   FEDERAL COURT PROCEEDING?  ARE THERE GOING TO BE

18   MULTIPLE FEDERAL COURT PROCEEDINGS?

19           BUT IN ANY OF THESE SCENARIOS, I BELIEVE

20   YOU'RE GOING TO -- IT'LL MAKE SENSE TO HAVE SOME

21   COORDINATION OF DISCOVERY.

22           SO, FOR EXAMPLE, IF A DEFENDANT'S

23   30(B)(6) WITNESS IS BEING PRODUCED IN ONE CASE, WOULD

24   THAT APPLY TO OTHERS?

25           AND WHAT'S THE MOST EFFICIENT WAY TO GO

1    ABOUT THAT?

2              BUT PUTTING THAT ASIDE, JUST IN TERMS OF

3    GATHERING DOCUMENTS AND -- I MEAN, THAT WOULD SEEM TO

4    ME SOMETHING YOU ARE GOING TO HAVE TO DO NO MATTER

5    WHAT.  I'M NOT TALKING ABOUT PRODUCING THEM.  I'M

6    TALKING ABOUT STARTING THE PROCESS.  I WOULD IMAGINE

7    YOU WOULD HAVE ALREADY THOUGHT ABOUT THAT.

8              MR. FINE:  WE ARE GATHERING THEM, YOUR HONOR.

9              THE ISSUE REALLY IS, ARE THEY NECESSARY

10   FOR THE MOTION TO REMAND?  AND THEY'RE NOT.

11             IF THAT MOTION WERE TO BE GRANTED, THE

12   PLAINTIFF DOESN'T NEED ANY DOCUMENTS NOW.

13             MR. BRIAN:  THE WAY ALL THIS WORKS THESE

14   DAYS -- ALTHOUGH I'M PROBABLY THE LEAST KNOWLEDGEABLE

15   ELECTRONICALLY.  BUT MUCH OF THIS IS DONE WITH SEARCH

16   TERMS AND DATABASES.  AND WE'D LIKE TO DO IT ONCE.

17   IT'S GOING TO BE A MAMMOTH TASK ONCE WE DO IT.

18             THE COURT:  WHAT ARE YOUR VIEWS ON THIS?

19             MR. KANNE:  IF IT -- IT MIGHT BE SMARTER FOR

20   THE MDL -- TO HAVE THAT DECIDED BECAUSE IT WILL BE A

21   HUGE DATABASE ON A COMPUTER IN TERMS OF THE DOCUMENTS.

22   AND I WOULD REQUEST IT STAYED OPEN IN CASE WE WANTED TO

23   START SENDING OUT DISCOVERY, BUT I UNDERSTAND THEIR

24   CONCERNS.

25             MR. CHAMBERS:  I'M ALL ABOUT THE PRACTICAL

1    APPROACH, WHATEVER IS THE MOST EFFICIENT APPROACH.  SO

2    WE HAVE NO OBJECTION THERE.

3         THE COURT:  MR. KLAGER, ANY INPUT ON THIS

4    ISSUE?

5         MR. KLAGER:  NO, YOUR HONOR.  I DO ANTICIPATE

6    THERE WILL BE SOME CONSOLIDATION OF DISCOVERY.  THAT

7    SEEMS LIKELY.

8         THE COURT:  I THINK THERE'S A GENERAL

9    CONSENSUS THAT I WOULD DEFER SETTING DATES,

10   NOTWITHSTANDING THAT I -- BASED ON REVIEWING YOUR

11   PLEADINGS TO THIS POINT, I HAD SOME IDEAS ABOUT THAT.

12        BUT IF I'M GOING TO DEFER SETTING DATES

13   UNTIL THE HEARING IN OCTOBER, I THINK THAT EVERYONE

14   WILL KNOW A LOT MORE BY THEN ABOUT THE RELATIONSHIP

15   AMONG THE CASES HERE -- THAT ARE PRESENTLY HERE IN THE

16   CENTRAL DISTRICT AND THOSE IN OTHER DISTRICTS, THE MDL

17   PROCESS AND A MEANS OF COORDINATING THE DISCOVERY.

18        AT THE SAME TIME, I THINK THAT ALL

19   PARTIES SHOULD BE - CONSISTENT WITH YOUR OBLIGATIONS

20   UNDER RULE 26 AND RULE 16 AND GENERAL CONCEPTS OF

21   HAVING TO MAINTAIN AND PRESERVE DOCUMENTS - INVOLVED IN

22   THAT PROCESS.  SO THAT I DON'T HEAR IN OCTOBER, WELL,

23   IT'LL TAKE US A FEW MONTHS TO DETERMINE WHAT DOCUMENTS

24   WE MIGHT BE HAVING TO SEARCH ELECTRONICALLY.  I THINK

25   THAT YOU SHOULD GET A JUMP ON THAT.

1           AND SAME ON THE PLAINTIFF'S SIDE.

2    NATURALLY, YOU MIGHT HAVE FEWER DOCUMENTS.

3           SO I'LL STAY DISCOVERY IN THE ACTIONS

4    PENDING HERE, PROVIDED, HOWEVER, THAT'S WITHOUT

5    PREJUDICE TO THE ABILITY OF ANY PARTY TO SEEK RELIEF

6    FROM THE STAY FOR GOOD CAUSE SHOWN.

7           AND IF -- IF DISCOVERY -- IF SUCH A

8    MOTION OR MOTIONS ARE FILED AT THAT TIME, I'LL

9    DETERMINE HOW TO PROCESS THEM, WHETHER THE MAGISTRATE

10   JUDGE WILL BE INVOLVED OR WHETHER I'LL HANDLE THEM

11   MYSELF.  I DON'T KNOW YET BECAUSE I DON'T KNOW WHAT THE

12   ISSUES ARE.

13           JUST A MINUTE.

14           MR. BRIAN, IN TERMS OF -- ARE THERE ANY

15   OTHER ISSUES THAT YOU WANTED TO DISCUSS TODAY?

16           MR. BRIAN:  NO, YOUR HONOR.

17           THE COURT:  ANY OTHER ISSUES?

18           MR. FINE:  NO, YOUR HONOR.

19           MR. CHAMBERS:  NO, YOUR HONOR.

20           MR. KANNE:  NO, YOUR HONOR.

21           THE COURT:  AND, MR. KLAGER?

22           MR. KLAGER:  NO, YOUR HONOR.

23           THE COURT:  IN TERMS OF TRYING TO RESOLVE

24   THESE MATTERS, AGAIN, IT'S A SOMEWHAT -- IT COULD BE A

25   SOMEWHAT COMPLEX ISSUE, BUT YOU DID MENTION IN YOUR

1    REPORT USING A PRIVATE NEUTRAL.

2          MR. BRIAN:   I THINK WHAT WE SAID IN OUR REPORT

3    WAS THAT, IN LIGHT OF THE ISSUES UNDER THE SAFETY ACT,

4    WE DON'T SEE ANY REALISTIC SETTLEMENT IN THE NEAR

5    HORIZON.

6          PLUS, SETTLING -- EVEN IF WE DIDN'T HAVE

7    THE SAFETY ACT ISSUE, THE IDEA OF SETTLING ANY

8    INDIVIDUAL CASE IS NOT SOMETHING WE WOULD -- CAN DO.

9          THE COURT:   OKAY.  BUT AT SOME POINT, THERE

10   MAY BE, AFTER A DETERMINATION -- WELL, AS THE MATTER

11   PROGRESSES, THERE MAY BE A TIME WHERE SOME -- WHERE A

12   SETTLEMENT EFFORT MIGHT MAKE SENSE.

13          DO YOU DISAGREE WITH THAT?

14          MR. BRIAN:   THERE ARE DISPOSITIVE MOTIONS

15   UNDER THE SAFETY ACT AND THEN ISSUES OF SUMMARY

16   JUDGMENT OR EVEN MOTIONS TO DISMISS OR JUDGMENT ON THE

17   PLEADINGS BASED ON FORESEEABILITY AND PROXIMATE

18   CAUSATION.

19          IF WE WERE TO COME OUT ON THE OTHER SIDE

20   OF THOSE, THEN IT MAY BE APPROPRIATE TO TALK ABOUT

21   SETTLEMENT.  BUT I THINK IT IS PREMATURE AT THIS TIME,

22   YOUR HONOR.

23          THE COURT:   WHAT ARE YOUR VIEWS?

24          MR. CHAMBERS:   PLAINTIFF AGREES.

25          WE'RE ALWAYS OPEN TO SETTLEMENT, AS YOU

1    KNOW.  BUT AT THIS TIME WITH EVERYTHING PENDING, I

2    THINK IT WOULD BE PREMATURE TO EXPECT ANYTHING.

3              THE COURT:  I DIDN'T MEAN TO DO IT RIGHT NOW.

4              MR. KANNE:  I AGREE WITH THAT TOO.

5              THE COURT:  AND, MR. KLAGER, ANY THOUGHT ON

6    THIS?

7              MR. KLAGER:  NO.  I'M NOT OPPOSED TO DOING IT

8    EITHER WAY.  SOMETIMES CASES COULD BE -- SETTLEMENT

9    TALKS COULD HAPPEN BEFORE THOSE THINGS ARE RESOLVED OR

10   AFTER.  BUT IF THEY MAINTAIN THAT THEY NEED TO DO THAT

11   FIRST, THEN SETTLEMENT TALKS, I GUESS, WOULD NOT BE

12   VERY FRUITFUL.  SO I LEAVE THAT TO THEM.

13             THE COURT:  WHAT I'D LIKE YOU TO DO IS THIS:

14   TWO WEEKS IN ADVANCE OF THE OCTOBER HEARING, WHICH IS

15   OCTOBER 15, I'D LIKE YOU TO FILE A JOINT REPORT WITH

16   RESPECT TO THE FOLLOWING:

17                  ONE, JUST ANY UPDATES THAT ANY -- ANY

18   UPDATES THAT ONE OR MORE PARTY THINK ARE NECESSARY IN

19   CONNECTION WITH THE SCHEDULING ISSUES THAT I'VE

20   DEFERRED UNTIL THAT TIME.

21                  AND, SECOND -- I'VE ALREADY TALKED ABOUT

22   THE STATUS OF THE MDL.  BUT, SECOND, WHAT SETTLEMENT --

23   THE TIMING OF A SETTLEMENT PROCESS, IF ANY, BASED ON

24   ANY DEVELOPMENTS BETWEEN NOW AND MID-OCTOBER.

25                  AGAIN, MY QUESTION IS NOT FRAMED TO

1    SUGGEST THAT YOU'RE GOING TO HAVE SETTLEMENT

2    DISCUSSIONS PRIOR TO THE RESOLUTION OF CERTAIN MOTIONS.

3    BUT I THINK IT WOULD BE USEFUL TO HAVE -- POTENTIALLY

4    TO DISCUSS A PROCEDURAL STRUCTURE UNDER WHICH

5    SETTLEMENT TALKS MIGHT OCCUR BASED ON WHAT YOU KNOW BY

6    MID-OCTOBER.

7              SO, FOR EXAMPLE -- YOU KNOW, FOR EXAMPLE,

8    IF THERE'S AN MDL PROCEEDING, YOU MAY WISH TO -- YOU

9    MAY THINK IT'S BEST TO CONDUCT SETTLEMENT DISCUSSIONS

10   IN CONNECTION WITH THE MDL PROCEEDING IN THAT

11   PROCEEDING.  I JUST HAVE IN MIND A STRUCTURE, NOT THAT

12   YOU WOULD BE SUGGESTING A PARTICULAR DATE.

13             AND I THINK THAT WOULD ALSO INVITE YOU TO

14   DISCUSS SOME PRIVATE NEUTRALS ON WHOM YOU MIGHT AGREE,

15   IF YOU ULTIMATELY CONCLUDE TO ENTER INTO SOME FORM OF

16   SETTLEMENT DISCUSSIONS.

17             I DON'T THINK THAT'S -- ANYWAY, MY

18   REQUEST -- WHAT I HAVE IN MIND IS NOT INTENDED TO BE

19   VERY BURDENSOME.  I JUST WANT AN UPDATE.

20             MR. BRIAN:  WE UNDERSTAND, YOUR HONOR.

21             THE COURT:  ANYTHING ELSE?

22             MR. KANNE:  NO, YOUR HONOR.

23             MR. BRIAN:  NOT FROM THE MGM DEFENDANTS, YOUR

24   HONOR.

25             MR. FINE:  NO, YOUR HONOR.

1        THE COURT:   THANK YOU FOR YOUR HELP TODAY.

2        MR. BRIAN:   THANK YOU, YOUR HONOR.

3              **(END OF PROCEEDINGS)**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES        )
                             )
STATE OF CALIFORNIA          )

           I, ALEXANDER T. JOKO, FEDERAL OFFICIAL

COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT

COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY

CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED

STATES CODE, THAT THE FOREGOING IS A TRUE AND CORRECT

TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS

HELD IN THE ABOVE-ENTITLED MATTER, AND THAT THE

TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED

STATES.

DATE:  JULY 18, 2018


                /S/ ALEXANDER T. JOKO
                _____
                ALEXANDER T. JOKO, CSR NO. 12272
                FEDERAL OFFICIAL COURT REPORTER